## 13274. LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY *v.* GEORGIA AUTO & SUPPLY COMPANY.

Although the location of the insured property is usually an essential element in the description in a fire-insurance policy, and the policy will not be extended to property not within the terms of the description in this respect, yet where the policy is not expressly limited to loss occurring while the property is in a specified location, and where the property is particularly described otherwise than by its location, and where, from its mobile character and from the use intended, the contracting parties must be presumed to have contemplated that the property would be more or less continually moved to different places, the mere inclusion of a statement of its location with the other words of description does not necessarily require the construction that the statement of location was intended to constitute an essential part of the terms and conditions of the risk assumed. Especially is this true in this case, where an " open " policy was issued to an automobile " dealer," under which insurance on particular cars was evidenced by certificates or

entries in a passbook, and where the policy stated that the property named and described therein was insured "while within the limits of the United States . . and Canada, including while in building, on road, on railroad car or other conveyance," etc., and that it was "usually kept in — see certificate — garage located " at a designated place, the certificates covering cars in different specified locations, and there being no provision limiting the insurance to a specified location.

Even though the policy were to be construed as limiting the insurance to a specified location, yet as the insurer issued the certificates with actual knowledge through its agent that the cars were not at the place indicated in the certificates, but that some of them had been removed and that the remainder were then being removed, it must be held that the insurer waived that condition.

Although the original policy did not under the term " automobile " cover extra bodies, yet by special contract, as shown by the passbook entries, the insurance was expressly made to cover extra bodies.

The petition as amended set forth a cause of action, and the court did not err in overruling the demurrers.

DECIDED NOVEMBER 23, 1922.

Action on insurance policy; from Chatham superior court — Judge Meldrim. December 27, 1921.

Application for certiorari was denied by the Supreme Court.

This suit is by an automobile dealer on a contract of fire insurance covering certain automobiles. The defendant excepts to the overruling of its demurrers to the plaintiff's petition. The plaintiff seeks to recover for the loss by fire of eighteen automobiles and three bodies for White trucks, under a contract called an " automobile policy," which by a rider attached thereto is designated as a " Dealer's open policy. Passbook or certificate form." The original policy was dated November 6, 1918, and the loss occurred on January 26, 1921. The rider referred to was dated and attached March 16, 1920. The plan of insurance provided for by the policy did not fix a date of expiration, nor did it specify a rate or premium or provide for the amount of the insurance. All of these matters were by the terms of the policy left " open." The first provision in the body of the policy is as follows: " In consideration of the warranties and the premium hereinafter mentioned does insure the assured named and described herein upon the body, machinery, and equipment of the automobiles described herein, while within the limits of the United States (exclusive of Alaska, the Hawaiian Islands, and Porto Rico) and Canada, including while in building, on road, or common carrier or other conveyance, ferry or inland steamer, or coastwise

steamer between ports within said limits, for the term herein specified and to an amount not exceeding the amount of insurance herein specified against direct loss or damage caused while this policy is in force, by the causes specifically insured against."

The first portion of the policy, a copy of which is attached to the petition, is in form as follows:

" Automobile Policy — The Liverpool & London & Globe Insurance Company, Limited, of Liverpool, England — No. A-2522. Liverpool — 1 Dale Street — London — 1 Cornhill. $——. Open — Rate Open — Prem. Open. Office Southern Department, New Orleans, La. A Stock Company, Chief Office, Liverpool, England — in consideration of the warranties and the premium hereinafter mentioned, does insure the assured, named and described herein, upon the body, machinery, and equipment of the automobile described herein, while within the limits of the United States (exclusive of Alaska, the Hawaiian Islands, and Porto Rico) and Canada, including while in building, on road, on railroad car or other conveyance, ferry or inland steamer, or coastwise steamer between ports within said limits, for the term herein specified and to an amount not exceeding the amount of insurance herein specified against direct loss or damage caused while this policy is in force, by the perils specifically insured against.

" (Space for attachment of indorsements.)

" Form No. 3.

" Non-valued Fire and Transportation.

" Amount $——. Open. Rate Open. Premium Open. Name of assured, Georgia Auto & Supply Company. Address of assured, Savannah, Georgia.

" The term of this policy begins at noon on the 6th day of November, 1918, and ends on the —— (see certf.) day of —— (see certf.) 19 —.

" Warranties.

" The following are statements of facts known to and warranted by the assured to be true, and this policy is issued by the company relying upon the truth thereof:

" 1. Assured's occupation or business is garage and sales agency.

" 2. The following is the description of the automobile: Model: Year. Trade-Name. Type of Body. (If truck, state tonnage.) Factory No. List Pr. Advertised Horse Power. See certificate.

" 3. The facts with respect to the purchase of the automobile described are as follows:

" Purchased by the Assured. No. Year. New or Second-hand. Actual Cost to Assured, Including Equipment. The automobile described is fully paid for by the assured and is not mortgaged or otherwise incumbered, except as follows: See certificate.

" 4. The uses to which the automobile described are and will be put are: See certificate.

" 5. The automobile described is usually kept in — see certificate — garage located 222-226 Drayton street, Savannah, Ga.

" Perils insured against (except as hereinafter provided):

" (A)  Fire arising from any cause whatsoever and lightning.

" (B)  While being transported in any conveyance by land or water, stranding, sinking, collision, burning or derailment of such conveyance, including general average and salvage charges for which the assured is legally liable.

" Exclusions:

" 1. It is a condition of this policy that this company shall not be liable for:

" (a)  Loss or damage to robes, wearing apparel, personal effects, or extra bodies.

" (b)  Loss or damage which may be caused directly or indirectly by invasion, insurrection, riot, civil war or commotion, or military or usurped power.

" 2. It is a condition of this policy that it shall be null and void:

" (a)  If the automobile described herein shall be used for carrying passengers for compensation, or rented or leased, or operated in any race or speed contest during the term of this policy."

The policy does not contain any such provision as is found in the standard fire policy, expressly limiting the insurance while the property is contained in the specified location, and not elsewhere. Among the remaining provisions of the policy are the following: The policy " is made and accepted subject to the provisions, exclusions, conditions, and warranties set forth or indorsed hereon, together with such other provisions, exclusions, conditions, or warranties as may be indorsed hereon or added hereto, and upon acceptance of this policy the assured agrees that its terms embody

22

all agreements then existing between himself and the company or any of its agents relating to the insurance described herein, and no officer, agent, or other representative of this company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached."

On February 21, 1919, a rider was issued and attached to the policy reading: " This policy is made to also cover in the brick building situated No. 412 N/S Bay Street East, in Savannah, Ga." The rider referred to as having been issued and attached on March 16, 1920, is incorporated in paragraph 9 of the petition. This rider specifically provides that " The terms and conditions contained in this form supersede anything to the contrary printed in the policy to which this form is attached." Certain pertinent sections from this rider are here incorporated, as follows:

" 1.  This insurance to attach and cover upon automobiles, owned and for sale by the assured, consisting principally of automobiles known by the trade-name of (see certificate), including bodies, chassis, tops, and other equipment attached to or forming part of such automobiles."

" 3.  This policy to be deemed continuous and to remain in force until canceled in accordance with its conditions, at which time all liability of this company in respect to declarations hereunder shall cease absolutely."

" 5.  *Coverage.*  This insurance subject to the conditions and limitations of the policy of which this form is a part covers such automobiles as have been specifically accepted by the company and only from the time of such acceptance, and continues (unless canceled) until said property is delivered to the purchaser, or until same otherwise passes out of the possession of the assured, this period in no event to exceed twelve months or to extend beyond the termination of the policy."

" 6.  *Entries and records.*  The insurance on each automobile shall be evidenced by proper entries in a passbook provided for this purpose, or a certificate issued hereunder, and such passbook or each certificate issued hereunder is hereby made a part of this policy, such entries or certificates to state the storage location of the automobile.  It is further agreed that the company through

its duly authorized agent, and at all reasonable times shall have access to the assured's books and records for the purpose of determining the storage location of automobiles insured hereunder and premiums which should be paid with respect thereto, and that any evasion or attempted evasion by the assured, in the matter of reports of automobiles, their storage locations, or payment of premiums hereunder shall void this policy and all insurance hereunder, and shall be an absolute defense to any suit or action brought under this policy."

" 8. *Payment of premiums.* The premium for insurance under this policy shall be calculated pro rata at the agreed rate for the period during which each such insurance is in force, and at the end of each calendar month the premium shall be payable in cash on all risks canceled during that month, but on any risk remaining open for three consecutive months the risk is to be canceled pro rata, the earned premium payable in cash and the insurance rewritten without lapse under a new entry or certificate, or, if preferred, the entry or certificate may be closed for an annual term and pro rata return premium allowed when the risk is canceled. The premium charge on any one risk shall be one dollar."

The original paragraph 10 of plaintiff's petition is as follows: " As was contemplated by the printed and typewritten terms of said policy of insurance, and the said ' riders ' which were issued to petitioner by said company, through its said agents, from time to time during the period while said policy was in force, various certificates covering specific vehicles and parts which were from time to time in the possession of petitioner at Savannah, Ga., while said policy was in force. Whenever any particular vehicle would be disposed of by petitioner, the certificate covering that particular vehicle would be canceled. Whenever additional vehicles came in from time to time, additional certificates would be issued to petitioner to cover the same. From time to time also, during the period when said policy was in force, and prior to and up to the date of the fire herein referred to, said insurance company, through its said agent, rendered bills to petitioner for the insurance premiums due to be paid by petitioner for said insurance, which bills were duly paid, the amount of the bills so rendered from time to time being determined by the number and value of the vehicles and other property from time to time covered by said policy, and

for which certificates had been issued, as well as by the places where said property was kept or stored, the rate and risk varying with various locations, and said insurance company, by the terms of paragraph 6 of said 'rider' of March 16, 1920, being given ' access to the assured's books and records for the purpose of determining the storage locations of automobiles insured hereunder and premiums which should be paid with respect thereto.' If in a particular case no certificate was issued for a vehicle or other property covered by said policy and intended so to be, a suitable entry· covering such vehicle or other property would be made in the ' passbook' furnished for such purpose by said insurance company, and referred to in the ' rider' of March 16, 1920, above mentioned. Usually all vehicles and other property insured under said policy were entered in such passbook, and generally certificates were also issued for the same, but all such articles of property were covered by said policy of insurance if entered in the passbook, or if a certificate covering the same were issued, or both, the two plans being alternative."

An amendment to this paragraph of the petition was allowed by which the following was added: " The certificate plan rather than the passbook plan was used more especially with reference to cars and other articles that your petitioner might wish to pledge at a bank as security for a loan. The method adopted and pursued by said insurance company from the date of the issuance of said policy until the date of said fire and thereafter, in bringing under said policy and in canceling out from under said policy automobiles and other articles from time to time insured thereunder and from time to time canceled out, was as follows: Said insurance company, through its duly authorized agents at Savannah, Ga., furnished to petitioner, for its use in this respect, what was known as an entry blank, printed on white paper, and what was known as a cancellation blank, printed on yellow paper. The entry blank contained a place for the date on which it was to be filled out and other suitable blanks wherein to insert a description of the car or other articles to be covered by said policy of insurance, including the entry number, policy number, name of assured, name of car, amount, rate, type, model, year, motive power, car number, date of entry, number of cylinders, horse-power, list price of car, new or secondhand, cost to dealer, and

location. A sample of said white paper entry blank is attached hereto, marked 'Entry Notice,' and made part hereof. The cancellation blank printed on yellow paper contained appropriate blanks wherein to insert the date, entry number, policy number, amount, from what date to what date, number of month, number of days, earned premium, name of assured, and number, name of car, and remarks. A sample of said yellow paper cancellation blank is hereto attached, marked 'Cancellation Notice' and made part hereof. Each of said blanks contained an appropriate blank space at the bottom where the insurance agents were to sign. When a car or other article was to be brought under said policy and to be covered thereby, petitioner was to fill out the entry blank furnished to it for that purpose, and transmit the same to the Savannah agents of said insurance company, who thereupon accepted said entry, and whose duty it then became to make appropriate entries in their records and in the passbook, or to issue an appropriate certificate for the car or other article. When a car or other article was to be canceled out, your petitioner would fill out the yellow cancellation blank, and transmit the same to the Savannah agents of said insurance company, whose duty it then became to cancel out from under said policy the car or article mentioned in the cancellation certificate, and to bill petitioner at the end of the calendar month for the earned premium thereon as provided in paragraph 8 of the 'rider' of March 16, 1920. All cars and other articles in this petition referred to were reported by petitioner to the Savannah agents of said insurance company on said entry blanks in the manner above described and pursuant to the method and practice adopted by said company and its said agents."

Attached to the original petition are copies of twenty certificates, eight of which are dated October 1, 1920, and the remainder subsequently thereto, representing accepted insurance on as many cars, the cost value of only eighteen of which is, however, sued for, since it is alleged that the value of the other two has been settled for. The form of one of these certificates, indicative of the form of all, is as follows:

"Open Policy No. A-2522. Automobile Certificate. Certificate No. 10804. The Liverpool & London & Globe Insurance Company, Limited, of Liverpool, England. Savannah, Ga., October 1st, 1920. This certifies that Georgia Auto & Supply Company

has insurance under open policy No. A-2522 to the amount of sixteen hundred and fifty and no/100 dollars. Date of entry, 1 day of October, 1920. Entry closed, —— day of ——, 19—. On the body, machinery and equipment of automobile No. 53550. Name of manufacturer or make, Liberty. Type, sport. Horse power,——. Year model, 1920. Cost to assured, $1,645.53. Motive power, gasoline. New or secondhand, new. Location, 412 East Bay street, Savannah, Ga. Rate: Contents 2.60%; building, ——%. Subject to all stipulations and conditions of the open policy referred to above. Premium, $——. Not valid unless countersigned by the duly authorized agent of this company at Savannah, Georgia. Exhibit C-1. [Printed signature] Clarence F. Low, Manager. [Signed] W. F. Train & Co., Agent."

Of the eighteen certificates, representing the eighteen cars the value of which is sued for, it appears that under the head "Location" eight were designated "412 East Bay St., Savannah, Georgia," five "222 Drayton St., Savannah, Ga., and five "230 Drayton St., Savannah, Ga." Paragraph 13 of the petition shows that certificates were not issued for the three bodies for White trucks, but that these were covered by entries in the passbook. By amendment these entries were shown to be as follows:

| Entry No. | Commencement | | | Amount Insured | Year Model of Car | Trade Mark | Number | Cost to Assured | New or Secondhand |
|---|---|---|---|---|---|---|---|---|---|
| | Month | Day | Year | | | | | | |
| 39 | Dec. | 28 | 1920 | $303.46 | '19 | Turn body for White Truck | 73013 | $303.46 | New |
| 40 | | 28 | 1920 | 303.46 | '19 | Turn body for White Truck | 74610 | 303.46 | " |
| 41 | | 28 | 1920 | 168.00 | '19 | Stake body White Truck | 70564 | 168.00 | " |

By a subsequent amendment it was alleged that "The said entries in the passbook were made on December 28, 1920. The said three bodies for White trucks were, at the time of said fire, in the warehouse on the premises of the Atlantic Coast Line Railway Company on East Broad street, approximately opposite the easterly end of Gaston street, in Savannah, Ga." By an amendment allowed December 10, 1921, paragraph 11 of the petition was made to read as follows: "On January 26, 1921, at or about 12:15 o'clock a. m., a fire occurred in a warehouse on East Broad street approximately opposite the easterly end of Gaston street,

Savannah, Ga., on the premises of the Atlantic Coast Line Railway Company, in which warehouse were at that time stored numerous vehicles and other property owned by petitioner. This warehouse was the principal storage location used by petitioner at that time. Said vehicles and other property of petitioner were stored there for the time being, pending sale or removal for demonstration purposes, or otherwise, in the course of petitioner's regular business as hereinabove described. In said warehouse at the time of said fire, and destroyed in said fire, were a number of vehicles and other property belonging to petitioner, which were originally entered under said policy at other locations, where they were located when so entered, particularly certain articles shown by their certificates to have been entered as at location 412 Bay Street East. On September 30, 1920, petitioner's lease had expired on the location at 412 Bay Street East, which had theretofore been its principal storage location; and its new storage location at East Broad and Gaston street, in the warehouse belonging to the Atlantic Coast Line Railroad Company, not being then ready for occupancy, said railroad company provided storage space for petitioner in the 'spirits sheds' on its wharves or yards at the easterly end of Bay street, and on or about October 1, 1920, when the lease on the old location expired, all the vehicles and other articles then stored at the old location were moved to said 'spirits sheds' on the Atlantic Coast Line yards. Thereafter, in December, 1920, when the new location in the Atlantic Coast Line warehouses at East Broad and Gaston streets was ready for occupancy, the vehicles and other articles then stored in said 'spirits sheds' were moved to the new location in the warehouses at East Broad and Gaston streets. Each of said removals your petitioner avers were in accordance with petitioner's rights under the policy contract, and were furthermore known to said insurance company and its said agents, and assented to by them as in accordance with the policy contract and the privileges intended by the parties thereto to be enjoyed by petitioner. For that, under date of October 1, 1920, there was added to said policy by said insurance agents, at petitioner's request, a certain 'rider' covering theft insurance, and in view of that addition to the contract, said agents called in and canceled all previously existing certificates, and issued new certificates instead, and canceled all previously existing passbook

entries, and made new entries therein instead, naming at the time, however, in said new certificates and passbook entries the old location at 412 Bay Street East, although advised at and before so doing that the articles theretofore located at .412 Bay Street East had been already moved, or were then being moved, to said ' spirits. sheds,' and were to be removed thence to the warehouse at Gaston and East Broad streets as soon as the same was ready for occupancy. Furthermore, on November 11, 1920, when said insurance company, through its said agents, issued to petitioner certificates Nos. 10820 and 10830 covering two Liberty touring cars, and copies of which certificates are attached to this petition and designated as Exhibits C-17 and C-20, the locations in which said certificates was shown as A. C. L. Whses.  A, B, C, and D, Savannah, Ga. (a part of the above-mentioned ' spirits sheds '), said agents were at that time and in their offices in Savannah, Ga., advised by petitioner's secretary, G. L. Kennedy, that the articles previously located at 412 Bay Street East were then located in said ' spirits sheds ' and that they and said two Liberty touring cars were to be removed thence to the warehouse at East Broad and Gaston streets as soon as the same was ready for occupancy.  And said agents then and there requested said secretary to notify them of the removal to the warehouse at East Broad and Gaston streets when said removal took place.  Pursuant to said request, and after said removal had taken place, petitioner, through its said secretary, gave written notice to said agents of said removal in a letter reading as follows:

" ' 12/9/20.

" ' W. F. Train & Company, Savannah, Ga.— Gentlemen: In re Policy A-2522, Liverpool & London.  This is to advise that we have moved .that portion of the stock of our cars which we have been carrying under the above policy in storage warehouse in the Coast Line yards on Bay Street Extension to a storage warehouse on Coast Line Yard, immediately adjacent to the intersection of East Broad and Gaston streets.  Yours truly.  G. L. Kennedy."

" Said notice and letter was written on the letter head and stationery of your petitioner.  Notwithstanding said known removals, said insurance company did not call in or cancel any of the outstanding certificates naming other locations nor cancel any of the passbook entries naming other locations, nor offer any ob-

jections to any of said removals, nor otherwise indicate any contention on its part that said removals were not permitted by the terms of said policy contract, nor that said removals were not within the intention of the parties to the contract as being among the privileges to which petitioner was entitled under said contract, but, on the contrary, said insurance company, through its said agents, under date of October 31, November 30, and December 31, 1920, and in accordance with the practice theretofore pursued by them under the provisions of paragraph 8 of the above-mentioned 'rider' of March 16, 1920, relating to payment of premiums, rendered to petitioner their bills at the end of each of said calendar months for the premiums payable 'on all risks canceled during that month, or prior thereto and remaining unpaid,' the articles for the loss of which this suit is now brought not being listed in any of said bills as among the 'risks canceled during that month.'

"Your petitioner further shows that after said fire, to wit, on May 18, 1921, said insurance company, through its said agents, sent to petitioner and sought to have petitioner accept and attach to the policy contract a 'rider' containing the following clause: 'Notice accepted that any and all automobiles insured under this policy are located at either 222 Drayton street or 230 Drayton street, and not elsewhere.' Your petitioner declined to assent to this change in the previously existing contract and said insurance company thereupon canceled said policy.

"There was destroyed in said fire the following articles of property belonging to petitioner, and which were at the time covered by said policy of insurance, to wit: Five Buick touring cars; three White trucks; three La Crosse tractors; three Liberty touring cars; two Liberty sport model cars; four Peerless touring cars; and three bodies for White trucks. The value of said property at the time of the fire and the loss sustained by petitioner through the destruction of said property by said fire was $38,186.60. The amount, however, for which said articles were insured under said policy was slightly less, being $38,006.51. The wreckage and remnants were guarded by petitioner, upon authority of said insurance company, and at its cost, from January 26 to March 17, 1921, inclusive, amounting to 51 days, at an expense for which watchmen's fees of $3.30 per day, amounting in the aggregate to $168.03, making the total amount of petitioner's claim against

said insurance company growing out of said fire the total of $38,174.81."

The defendant's demurrer to the amended petition as a whole is based on the theory that there is no averment indicating an acceptance of the risk upon the property involved as located at the time of the fire. The final demurrer to the amended petition, in which special reference is made to the claim for three bodies for White trucks, was as follows: " (1) The petition as amended sets forth no cause of action against this defendant. (2) The petition as amended shows that the property involved in the suit for which damages are claimed was not covered by the contract of defendant when the fire took place, and therefore defendant is not liable for its loss. (3) The petition as amended shows that the defendant did not insure the three bodies for White trucks alleged to have been entered in the passbook. (4) Because it does not appear by the petition as amended that the defendant ever agreed to the insurance of the said three bodies for White trucks, or was advised of the entries in the passbook alleged to cover the same. (5) The amendment does not set forth any cause of action."

The order of the trial judge overruling the demurrer was as follows: " Reference being had to plaintiff's amendments of November 30, 1921, and December 10, 1921, I am of the opinion that the demurrers should be overruled, and they are overruled, except so much of the tenth ground of the original demurrer which insists that the time when the entries in the passbook were made is not stated is sustained, with the right to the plaintiff to amend in 10 days to meet this demurrer." The final amendment to the petition of December 10, which has already been quoted, was made in response to this ruling.

Smith, Hammond & Smith, Adams & Adams, for plaintiff in error.

Hitch, Denmark & Lovett, contra.

JENKINS, P. J. (After stating the foregoing facts.) The questions presented by the record are: (1) Is the language relative to the location of the insured property, contained in the original policy, as taken in connection with or as modified by the language of the certificates, to be construed as a descriptive recital made for the purpose of additional identification of the property,

or must such language be treated as constituting an essential part of the terms and conditions of the contract attesting rights and limiting the liability thereunder? (2) If merely descriptive and used only as an additional means of identification, does such language nevertheless constitute a material and continuing warranty, so that a breach thereof would invalidate the policy? (3) If such words should be construed as contractual rather than descriptive in their nature, or as constituting an essential warranty, is the defendant estopped by its knowledge and conduct from claiming the benefit thereof? (4) If the contract be otherwise enforceable, is the claim on account of the three bodies for White trucks maintainable, when, by the terms of the original policy, loss or damage to "extra bodies" is expressly excluded, and the policy states that the insurance is to cover "the body, machinery, and equipment of the automobile described herein," and by the terms of the rider subsequently attached it was to cover "automobiles, owned and for sale by the assured, consisting principally of automobiles known by the trade name of — see certificate — including bodies, chassis, tops, and other equipment attached to or forming a part of such automobiles," but when the certificate itself, to which reference is repeatedly made both by the original policy and by the rider, specifically insures the bodies for White trucks as such.

1, 2. Section 2475 of the Civil Code (1910) declares that "The contract of insurance should be construed so as to carry out the true intention of the parties." The rules that contracts of insurance are to be liberally construed against the interest of the insurer who has prepared the policy, and so as to avoid a forfeiture if possible, are not in conflict with this provision of the code, nor do they run counter to that other fundamental rule of construction which prescribes that in case of ambiguity a contract will, if possible, be treated as valid and efficient rather than useless and nugatory, in order that the substantial purpose and intent of the contracting parties might be carried out, and that the parties are presumed to have had in contemplation the nature and character of the business, and to have foreseen the usual course and manner of conducting it. Thus, in construing a policy of insurance so as to arrive at the true intention of the parties, the ordinary legal and literal meaning of the words must be given effect where it is

possible so to do without destroying the substantial purpose and effect of the contract. *Maril* v. *Conn. Fire Ins. Co.,* 95 *Ga.* 604 (23 S. E. 463, 30 L. R. A. 835, 51 Am. St. Rep. 102); *Cherokee Brick Co.* v. *Ocean &c. Corp.,* 21 *Ga. App.* 702 (94 S. E. 1032); *Clay* v. *Phœnix Ins. Co.,* 97 *Ga.* 44 (25 S. E. 417); *North British &c. Ins. Co.* v. *Tye,* 1 *Ga. App.* 380 (58 S. E. 110).

It is a well-recognized general rule that a policy of fire insurance which is expressly limited to loss occasioned while the insured property is located in a definite and particular place does not impose liability such as will follow the property upon its being removed to and destroyed at another and different place. Such a construction is plain enough where the contract embodies the " standard fire policy " clause expressly stipulating that it shall cover the property " while " contained in a certain described building " and not elsewhere." The use of such particular words of limitation as quoted from the " standard fire policy " clause does not, however, constitute the only means of manifesting an intent to impose such a limitation upon the liability of the insurer. For example, in a policy which did not contain such a clause, it has been held that, where the insured property is described in no other way than as being contained in a certain building, no liability can extend for loss incurred elsewhere. Benton v. Farmers' Mut. Fire Ins. Co., 102 Mich. 281 (60 N. W. 691, 26 L. R. A. 237). In such a case the sole basis of the liability necessarily rests upon such a construction. Likewise, it has been recognized that, even though the insured property be otherwise described, yet if it be designated as " contained in " a certain building, and from its nature, character, and ordinary use is to be continuously kept in such place, the location of the property is ordinarily to be taken as an essential element of the risk. This would be especially true where, as in *Simonton* v. *Liverpool &c. Ins. Co.,* 51 *Ga.* 77, the terms of the policy plainly indicate that the nature and character of the particular building, such as the " 2-story tin roof store," was in the minds of the contracting parties as constituting a material element of the risk. While the text-book writers seem unable to lay down any uniform and trustworthy rule relative to whether a mere statement as to the location of the property constitutes a continuing warranty or is to be taken as a contractual limitation upon the insurer's liability, it is perhaps in view of the exceedingly great

number of policies of the kind and character we have just referred to that we find attempted generalizations of the rule, such as the following from 19 Cyc. 664: "The location of the property is usually an essential element in the description, and the policy will not be extended to property not within the terms of the description in this respect. The location of personal property is as material a part of its description as the location of buildings; and if the personal property is described as kept or contained in a certain building, its loss will not be covered if destroyed elsewhere. And a removal of the property to another building or location takes it out of the description of the policy."

Where, however, no such words of limitation are used as are employed in the "standard fire policy," and where the insured property is particularly described otherwise than by its location, and where from the mobile nature and character of the property and from the use intended the contracting parties must be presumed to have contemplated and foreseen that it would in the nature of things be more or less continually moved for different purposes to different places, the mere inclusion, along with other words of description, does not necessarily require the construction that a statement of the location was intended to constitute an essential part of the terms and conditions of the risk assumed, or, when thus intended merely for the purpose of additional identification, that it should constitute an essential and continuing warranty. Of course, by inserting the clause of limitation embodied in the "standard fire policy," or by the use of language of similar import, it is possible so to contract that any sort of property, and howsoever otherwise described, will be proctected only while located at the place designated in the policy. Rosenthal v. Ins. Co. of North America, 158 Wis. 550 (54 L. R. A. (N. S.) 361; 149 N. W. 155). But where no such words of limitation are used, the intent of the parties must be gathered in each particular case from the language used, as viewed in the light of the attendant circumstances. Mr. Joyce, in his work on Insurance (2d ed., vol. 4, § 2068) makes this observation: "But some consideration must be given to the nature of the property insured and the uses contemplated; so reference must be had to the voluntary acts of the assured — in fact, all the material circumstances should be considered. . . The above statement also applies where the property is, and is

known by the assured to be, of such a character in connection with the business in which it is employed as necessitates its temporary removal and its being kept temporarily in places other than the owner's premises, and where the description of location may be merely intended for identification." In 2 Cooley's Briefs on Insurance, 1618 (k), is found this statement: " On the question whether a statement in the policy that the personal property insured is situated in a certain place or contained in a certain building is a warranty that it shall remain in such location, the courts are in direct conflict. The weight of authority is that statements as to location are matters of description only, and not continuing warranties."

The great or seemingly great diversity of authority doubtless arises on account of the construction placed by the courts upon particular contracts, as to whether the language relative to the location of the property, as viewed in the light of the attendant circumstances, was intended to limit and define the rights of the parties, or whether it was intended merely as an additional aid to identification. In the instant case we are dealing not with an ordinary policy of fire insurance, but with an " open " policy issued in favor of a dealer in automobiles. It will be observed that the 5th section of the warranty contained in the original policy provides: " The automobile described is usually kept in — see certificate — garage located 222-226 Drayton street, Savannah, Georgia." It would not seem that such a statement of the location, especially where the cars are otherwise particularly described, could be taken as any sort of warranty, or that it was thereby intended to limit or define the liability. The language is manifestly much too indefinite to afford the basis of any such construction. Counsel for the defendant contended, however, that the certificates, which supersede the terms of the policy itself wherever in conflict, are precise in their statement as to location and contain no such loose and indefinite language, and that by the certificate and not by the language of the original policy the contracting parties should be governed. While the certificates are made to control when in actual conflict, the terms of the policy under which the certificates are issued remain of full force and effect except where superseded by inconsistent terms of the certificates. Although the policy sought in a loose and general sort of

way to specify the most usual location of the cars, it appears that even this was qualified by a reference to the certificate, which by the terms of the rider was to govern in cases of conflict. Thus, the original policy states that the cars are " usually " kept at a certain number on " Drayton street," but qualifies this statement by adding " see certificate." Most of the certificates give another location, but does this have the necessary effect of not only changing the stated location, but of striking that most significant word " usually " as well? In other words, in changing the stated place of location, does it go further and strike at the basic language employed by the policy, under which and in accordance with which the certificate was issued? Construing the policy and certificate together, does it not rather appear that, instead of the car being usually located at " Drayton street," it is usually kept at " Bay street ? " In other words, instead of filling in the location blank with " Drayton street," the certificates substitute the words " Bay street," but leave the original basic statement with reference thereto unaltered. This would seem to be at least a possible, if indeed not the most natural, construction; and in giving this construction it is possible to give effect to the language of both the original policy and the certificates issued thereunder. If such be a reasonable and possible construction, it should be applied, not only because the whole agreement can thereby be given effect, but also because such a construction is favorable to the insured, and the policy must be interpreted in his interest and against the interest of the insurer who prepared it. This familiar rule of construction has already been referred to, but the language used by Mr. Wood in his work on Insurance, p. 140, seems appropriate here: " It is the duty of the insurer to clothe the contract in language so plain and clear that the assured cannot be mistaken or misled as to the burdens or duties thereby imposed upon him. Having the power to impose conditions, and being the party who drew the contract, he must see to it that all conditions are plain, easily understood, and free from ambiguity."

In the instant case, is it necessarily true, as a matter of legal construction, that the protection afforded by the policy is limited to a loss occasioned while the property is actually in the building referred to in the certificates and not elsewhere, despite the lack of any such express clause of limitation as that embodied in the

"standard fire policy," despite the particular description of the property otherwise than by location, despite the use of the word "usually" in the original policy when referring to location, despite the character of the assured's business and the extremely mobile nature of the property insured, and despite the broad and sweeping language quoted from the first provision of the policy, insuring the property "while within the limits of the United States (exclusive of Alaska, the Hawaiian Islands, and Porto Rico) and Canada, including while in building, on road, or common carrier or other conveyance, ferry or inland steamer, or coastwise steamer between ports within said limits," and from the rider that the insurance "continues (unless cancelled) until said property is delivered to the purchaser or until the same otherwise passes out of the possession of the assured?" This is the defendant's contention. In the brief of its learned and distinguished counsel appears this statement: "The original policy shows a willingness on the part of the insurance company to insure in an extensive territory, but subject to the provisions that each automobile had to be specifically accepted and the evidence of such acceptance manifested by a certificate or entries in a passbook. If, for example, it was proposed to insure an automobile en route, a specific agreement would have to be made as to this automobile, and no contract could be inferred by the mere fact that the policy indicated a willingness to insure within an extensive territory. After the property arrived in Savannah, then the insurance was covered by the riders and the certificates, particularly by the latter, which were specific. We submit that the word 'usually,' which is used in the 5th paragraph of the original printed form, cannot help the defendant in error, in view of the specific contracts involved. It is in a printed form dated November 6, 1918. It was preliminary to specific insurance and did not purport to be the final, or the chief, contract with reference to specific property. On the contrary, the rider dated March 16, 1920, and made a part of paragraph nine of the original petition, in terms changes the policy, and at its conclusion provides that 'the terms and conditions contained in this form supersede anything to the contrary printed in the policy to which this form is attached.'"

Construing together the language of the policy and of the certificates written thereunder, and giving effect so far as possible to all

of the provisions contained within the entire contract, as construed in the light of the attendant circumstances and the essential purpose had in view by the contracting parties, we do not feel authorized to hold, as a matter of law, that the defendant's contention is sound, and that this particular and peculiar policy must necessarily be taken and construed just as the ordinary " standard fire policy," which in express terms limits its protection to " while " the property is located as prescribed " and not elsewhere." There are other clauses in the contract which seem to somewhat negative any such intention. For instance, if by legal construction we should say that the coverage is impliedly limited to while the cars are actually within the building named in the certificates and not elsewhere, then it would be somewhat difficult to interpret and give effect to the clauses of the rider which provide that the policy shall be null and void if the automobile described should be " used for carrying passengers for compensation, or rented, or leased," or should be " operated in any race or speed contest," during the term of this policy. The clause seems to corroborate the plaintiff's contention that the coverage of this dealer's policy was not intended to be pinned down to one definite contingency, to wit, while the cars were actually contained within the building mentioned in the certificates, but was intended to provide protection to the dealer against loss by fire under broad and sweeping terms of coverage, having in mind the nature and character of the assured's business and the usual course and manner of conducting it.

3. If the policy with its riders and certificates were to be construed as limiting the coverage to " while " the cars were actually within the building designated by the certificates " and not elsewhere," we think that the trial judge was, nevertheless, correct in holding that the allegations in the amendment were sufficient to legally raise the issue of estoppel. It has become well settled that a forfeiture of a contract of insurance cannot be waived by a local agent without the express assent of the governing authorities of the company. *Lippman* v. *Ætna Ins. Co.,* 120 *Ga.* 247 (4) (47 S. E. 593); *Sparks* v. *Natl. Union Fire Ins. Co.,* 23 *Ga. App.* 38 (97 S. E. 462). In other words, if the policy be valid when issued, in accordance with its terms, the subsequent knowledge, permission, or promise of the agent relative to invalidating facts subsequently arising does not have the effect of reviving it. In *Graham* v. *Niaga-*

*ra Fire Ins. Co.,* 106 *Ga.* 840 (32 S. E. 579), it was questioned whether even the governing authorities could do so, but in *Western Assurance Co.* v. *Williams,* 94 *Ga.* 128 (21 S. E. 370), it seems to be assumed that in such manner it could be done. It is, however, an equally well-settled principle of law that notice to the local agent who writes the insurance, given at the time the policy is issued and the premium paid, of the existence of a fact which by the terms of the contract would void the insurance prevents the operation of the forfeiture, since "the knowledge of the agent, who acts for the insurer when the policy is issued, of existing conditions which enter into the validity of the contract is the knowledge of the principal; and if the policy is issued with knowledge of a fact or condition which by a stipulation in the contract would render it void, the insurer is held to have waived the existence of such fact or condition in its application to the provisions of the policy. Otherwise the insurer would knowingly issue and accept pay for a policy void in its very inception, thereby practicing a fraud upon the insured." *Athens Mutual Fire Ins. Co.* v. *Evans,* 132 *Ga.* 703, 710 (64 S. E. 993, 996), citing *Mechanics Ins. Co.* v. *Mutual Bldg. Assn.,* 98 *Ga.* 262 (25 S. E. 457) ; *Johnson* v. *Ætna Ins. Co.,* 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. Rep. 92). See also *Athens Mutual Ins. Co.* v. *Ledford,* 134 *Ga.* 500 (68 S. E. 91) ; *Atlas Assurance Co.* v. *Kettles,* 144 *Ga.* 306 (87 S. E. 1) ; *Atlanta Home Ins. Co.* v. *Smith,* 136 *Ga.* 592 (71 S. E. 902).

In *Simonton* v. *Liverpool &c. Ins. Co.,* 51 *Ga.* 76, at the time the policy was issued the stock of goods was actually located in the house where under its terms they were required to be kept. The court held that neither notice to the agent of their subsequent removal nor his verbal consent thereto operated to prevent a forfeiture, on account of such consent not being endorsed on the policy. In *Beasley* v. *Phœnix Ins. Co.,* 140 *Ga.* 126, 127 (78 S. E. 722), while the agent knew of the additional insurance prior to the date of the fire, he did not have knowledge thereof at the time the policy was issued. In like manner, in *Nowell* v. *British-American Assurance Co.,* 17 *Ga. App.* 46 (85 S. E. 498), the additional insurance referred to was procured subsequent to the date of the policy sued on. In *May* v. *Globe &c. Fire Ins. Co.,* 23 *Ga. App.* 798 (99 S. E. 631), while the vacancy existed with the knowledge of the agent at the time the policy was issued, it cannot be said

that he must have then known that it would so remain for more than the ten days allowed by the contract. In *Athens Mutual Ins. Co.* v. *Evans,* 132 *Ga.* 703 (64 S. E. 993), the rulings made in the syllabus are as follows:

" 1. Where when a policy of fire insurance was issued upon a house the title thereto was in the insured, and the policy contained a condition that, unless provided otherwise by agreement indorsed thereon or added thereto, it should become void ' if any change, other than by the death of an insured,' took place in the title of the subject of insurance, the subsequent conveyance by the insured of the title to another, to secure the payment of a debt due him for the construction of the house, without the consent of the insurer, indorsed on or added to the policy, was such a violation of the inhibition against a change in the title as by the terms of the policy rendered it void.

" 2. Where the policy also provided that ' no officer, agent, or other representative of this company shall have the power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached,' the agent representing the company when the policy was issued had no power to bind the company by then giving a parol permission for the making of such security deed.

" 3. In the absence of fraud, accident, or mistake, the terms of a written contract can not be varied by parol evidence.

" 4. As the law of this State requires that a contract for fire insurance shall be in writing, such a contract can not be made partly in writing and partly in parol.

" 5. Where a policy contained the above-mentioned provisions and the property insured was a house, which the insurance company, at the time the policy was issued, knew the insured was under a moral and legal obligation to convey to another to secure the payment of a debt contracted for its construction, the issuance of the policy with such knowledge did not estop the company,

when an action was brought upon the policy to recover for a loss, from insisting that the policy was rendered void when such a conveyance of the insured policy was made without the consent of the insurer thereto having been obtained and expressed as the policy required."

Even that case does not seem analogous to the one at bar. There, as is pointed out in the opinion (p. 711), "the policy was not, under facts known to the insurer, according to its terms, void when it was issued. On the contrary, it was then perfectly valid; for if the house had been, without fault of the insured, destroyed by fire, in the interval of time between the issuance of the policy and the making of the security deed to Golucke & Son, the company would have been liable to the insured under its contract. It was the subsequent act of the insured which invalidated the policy. It matters not that this was an act which he was morally and legally bound to perform, and that the agent of the insurer knew this when the policy was issued. The company issued the policy with a promissory warranty on the part of the insured, implied by his acceptance of the same with the condition as to subsequent change of title therein, that the title should remain as it then was, unless changed with the consent of the company expressed by indorsement upon or addition to the policy. If it be granted that the company knew, through knowledge imparted to its agent, that sooner or later Evans was bound to make the security deed to the contractors who built the house for him, he, on the other hand, knew that in order to execute this deed without thereby rendering the policy void, he must first obtain the written consent of the company, expressed in the manner pointed out by the policy. If he had applied for this consent and it had been refused, he could have surrendered the policy and collected from the company the difference between the amount of the premium which he had paid and the customary short rate for the time during which the policy remained valid."

In the instant case it is set forth in the amendment to the petition that, at the very time the certificates were issued, the defendant was informed that the cars were not at the place which the certificates indicate, but that some of them had already been removed and that the remainder were at that time being removed. In this case, according to the allegations, the insurer issued the

certificates with actual knowledge to itself through its agent that the statement therein set forth with reference to the location was not true. Accordingly, in the language of the *Evans* case, supra, since the policy was "issued with knowledge of a fact or condition which by a stipulation in the contract would render it void, the insurer is held to have waived the existence of such fact or condition in its application to the provisions of the policy."

4. In reference to the claim for the three bodies for White trucks, while it is plain that the original policy in insuring automobiles sought by express terms to exclude "extra bodies," that is, the insurance on an *automobile* included only "the bodies, chassis and other equipment attached to or forming a part of such automobiles," still, where by the passbook it is made perfectly plain that in the case of these three bodies they were by special contract specifically insured as such, and since the claim is not made as for "extra bodies" going along with automobiles insured as such, we think that the terms of the actual contract, as evidenced by the passbook, should govern. It appears from paragraph 4 of the amendment that the insured must have filled out, on a form furnished by the company for that purpose, an entry blank covering these three articles, and that the company thereafter entered the same upon the passbook, thereby assuming the risk, and the plaintiff assuming its own obligation for the premium. The fact that the original policy speaks of the insurance as for automobiles, and excludes extra equipment when issued on automobiles, should not permit the company to escape liability on its own obligation thus definitely and specifically incurred.

*Judgment affirmed. Stephens and Bell, JJ., concur.*