26750. OHIO HARDWARE MUTUAL INSURANCE COMPANY *v.* SPARKS.

Decided April 22, 1938.

*Smith, Smith & Bloodworth, Estes Doremus,* for plaintiff in error.

*William P. Whelchel,* contra.

Sutton, J. Mrs. Charles E. Sparks brought suit against Ohio Hardware Mutual Insurance Company on an automobile-insurance policy, claiming damages by collision, the petition alleging that she parked her automobile in her garage in the City of Gainesville, Georgia, on the night of April 5, 1936, and that it remained in the garage throughout the night, and that about 8:30 o'clock on the morning of April 6, 1936, a very violent windstorm or tornado blew the garage off and away from the automobile, causing the falling of a heavy telephone and telegraph cable and telephone post, which post fell on or collided with the plaintiff's automobile and damaged it in a sum claimed. The policy, a copy of the material parts of which was attached to the petition, provided for a number of risks which might be insured against, the assured selecting the risks at the time of the application for insurance, the schedule being as follows:

| Perils | Limit of Liability | Net Rates | Premiums |
|---|---|---|---|
| 1. Fire, lightning, and transportation, as defined in paragraph F, page 2.. | $250.00 | $4.50 | $11.25 |
| 2. Theft, robbery, and pilferage, as defined in paragraph G, page 2 (unrestricted). .................... | $250.00 | $1.05 | $ 2.63 |
| 3. Theft, robbery, and pilferage, as defined in paragraph H, page 2 (restricted). ...................... | Nil | | |

4. Tornado, cyclone, windstorm, hail, earthquake, explosion, and water damage, as defined in paragraph I, page 2. ....................... Nil
5. Collision or upset, as defined in paragraph J, page 2. Actual cash value, in excess of $50. (Deductible) $5.00
6. Property damage, as defined in paragraph K, page 2................. $5000.00

Total Premium........................ $18.88

In the policy the perils insured against were shown by the amount of the specific premium opposite each item, being numbers 1, 2, and 5 in the schedule above set out. Under paragraph J, referred to in peril number 5, collision or upset is defined as "accidental collision or upset." The defendant filed general and special demurrers. The court, without passing on the special demurrers, overruled the general demurrer, and the exception is to that judgment, the plaintiff in error contending that the damage sustained was not covered by the policy.

The coverage of "collision" in insurance policies was formerly identified mainly with maritime cases. With the coming of automobiles in later years the courts have been called upon to determine liability under collision clauses in automobile-insurance policies. The cases in the main, however, have been those in which the automobile or thing with which it "collided" was in motion. Such a case came before the Supreme Court of this State in *Hanvey* v. *Georgia Life Ins. Co.,* 141 *Ga.* 389 (81 S. E. 206), where it was held that the petition was good against a general demurrer, the plaintiff alleging that, while operating the automobile covered by the policy, he sustained damages to it by reason of a collision with another object, a bank or side of a ditch on a certain road, the automobile leaving the roadbed and running into the ditch on the side and into the bank and turning over. The policy insured against loss or damage to the automobile if caused solely by collision with another object, either moving or stationary, but excluded all loss or damage caused by striking any portion of the roadbed or any impediment resulting from the condition thereof. The court stated that it could not say, as a matter of law, that the

petition alleged facts showing the accident to be within the exception mentioned. This case is relied on by the defendant in error, but it does not, in our opinion, furnish an answer to the question here presented, as it involved an automobile in motion under circumstances where, under a reasonable construction, a collision might be said to have occurred.

Adjudications have been made in a few cases where recovery was sought for damage sustained because of an object falling upon an automobile which was insured against collision. In Universal Service Co. v. American Ins. Co., 213 Mich. 523 (181 N. W. 1007, 14 A. L. R. 1813), it was held that the injury to an automobile truck by the falling upon it of a loaded scoop of a steam shovel engaged in loading the truck was within the coverage for loss and damage occasioned by collision. But in O'Leary v. St. Paul Fire &c. Ins. Co., 196 S. W. 575, a Texas case, it was held that under a policy insuring an automobile against collision with any other vehicle or object, excluding striking of roadbed, rails, ties, etc., the plaintiff could not recover for damages to his automobile caused by the second floor of the garage in which it was kept falling upon it, as it was not a "collision" with such an object as contemplated by the policy. In the opinion it was said: "The car was in a garage. The second floor of the building or garage falling upon the car caused the damage. Surely it can not be said that it was the intention of the parties, as ascertained from the terms of the policy, that the word 'collision' was broad enough to cover such damage as occurred in the instant case, and that appellee would be called upon to pay a loss caused by the falling of a building upon the car while the car was being left in the same."

In American Automobile Ins. Co. v. Baker, 5 S. W. (2d) 252, it was held that a clause of an automobile policy indemnifying the insured against damage or loss from accidental collision with any other automobile, vehicle, or object, did not cover damage from hail, since in the usual and popular understanding of the term a "collision" does not result from a force of gravity alone, especially when unaided by any human agency. In the opinion it was said: "The clause here involved, as above stated, is not a new or unusual one, but this identical clause has been used in policies covering collision insurance on automobiles for a great many years, and such use of the term is so unusual, and such a strained construction of

said term, that neither counsel nor this court has been able to find a reported case from any jurisdiction, either State or Federal, in which the contention was made that hail, sleet, rain or snow falling on a car was a collision with an object. Evidently there are, and have been for many years, thousands upon thousands of cars in this country covered by policies containing this identical clause, yet no case involving the question here is reported from any court. Obviously, the reason is that no other car was ever injured under similar circumstances, or it has not been supposed hitherto that the insurance of automobiles against damages caused by 'accidental collision with any other automobile, vehicle or object' included injuries sustained by a car by reason of hail. We do not speak of falling bodies, such as sleet or hail, as colliding with the earth. In common parlance, the apple falls to the ground; it does not collide with the earth. So with all falling bodies, especially where the fall is purely the result of the laws of nature, such as snow, rain, sleet, and hail. We speak of the descent of such bodies as a fall to the earth, not a collision with it. In the usual and popular understanding of the term, a collision does not result, we think, from the force of gravity alone, especially when unaided by any human agency contributing thereto."

As between the cases mentioned above we think that the conclusion reached by the Texas court is the more logical and reasonable. While the word "collision," as defined by lexicographers, might be strained to include any impact of one body with another, the word in an insurance policy must be construed in accordance with what the parties to the contract must reasonably be said to have contemplated as to the coverage. The rule of construction is stated in *Great American Indemnity Co.* v. *Sou. Feed Stores*, 51 *Ga. App.* 591 (1) (181 S. E. 115) : "While a policy of insurance is to be construed liberally in favor of the object to be accomplished, and its provisions will be strictly construed against the insurance company, and where it is susceptible of two constructions, that construction will be adopted that is most favorable to the insured, yet a contract of insurance should be so construed as to carry out the true intention of the parties, and their rights are to be determined by its terms so far as they are lawful, and the language of the contract should be construed in its entirety, and should receive a reasonable construction and not be extended beyond what is fairly

834

within its plain terms; and where the language fixing the extent of the liability of the insurer is unambiguous and but one reasonable construction is possible, the court must expound the contract as made." In *Hartford Fire Insurance Co.* v. *Wimbish,* 12 *Ga. App.* 712 (78 S. E. 265), it was held: "Words used in a policy of insurance are to be given their ordinary and usual signification, unless the context requires a different construction."

Although counsel for both parties discuss the question of probable cause in their briefs, the one contending that the storm itself was the efficient and proximate cause, and the other contending that the falling of the pole was that which actually caused the damage to the automobile, we do not think that any determination need be made as between the two forces. It indisputably appears that no human agency contributed to the damage; and it is clear that the action of the pole was in immediate sequence with the primal force, the storm or tornado, and that its fall was brought about solely by that instrument of nature. The pole came in contact with the automobile and damaged it, but it would seem to be a strange and unreasonable description to say that the pole, in falling, *collided,* or that the parties in making the contract contemplated that the coverage of "collision" would include the falling of the pole under the circumstances named. The definition, as made in the policy itself, is that the collision in contemplation must be an *accidental* collision. Manifestly, the storm or tornado was not an accident, but was an act of God. As was said in *Ohlen* v. *Atlanta & West Point R. Co.,* 2 *Ga. App.* 323, 328 (58 S. E. 511), "The act of God, as expressive of a cause of loss or damage, means a casualty not due to human agency,—not only not due to it, but one which is no way contributed to by human agency." Likewise, the falling of the pole, being entirely disconnected from human agency or mere gravity acting upon weakness, but resulting from the irresistible force of the storm or tornado, was not an accident. And, as was said in the Baker case, supra, in the usual and popular understanding of the word a "collision" could not be said to have resulted from the *falling* of one object upon another, especially when unaided by any human agency. When the one object descends upon the other we do not speak of it as colliding with the second but as falling upon it.

Another consideration that impels us to the conclusion that the

damage in question was not reasonably in contemplation of the contract is that, although the opportunity of being indemnified against damage by storm or tornado was afforded the insured, he chose not to avail himself of that item of coverage but contented himself with being protected against loss or damage due to "accidental" collision or upset, fire, lightning, transportation, theft, robbery, and pilferage, from which it must reasonably be deduced that any damage from a falling object, immediately associated with or in the sphere of the action of a storm or tornado, was not to be included in the coverage. The context may always be looked to for a proper construction of what was in the minds of the parties at the time of entering into the contract.

No cause of action was set forth in the petition, and the court erred in overruling the general demurrer.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*