30122. ATLAS ASSURANCE COMPANY LTD. *v.* LIES.

DECIDED OCTOBER 9, 1943.  REHEARING DENIED NOVEMBER 20, 1943.

*Bennet, Peacock & Perry,* for plaintiff in error.

*R. R. Jones,* contra.

SUTTON, J.  This is a suit by William Lies Jr., against Atlas Assurance Company Ltd. on a policy of automobile insurance for damages to his automobile caused by a tree falling and striking the automobile while it was traveling along a public highway.  It is alleged that the tree was blown down by a windstorm, and that it fell and struck the passing automobile.  The insurance coverage was stated in the policy as "comprehensive (full risk) coverage, excluding collision or upset," and therein defined as follows: "Comprehensive—excluding collision or upset: Any loss or damage to the automobile and the equipment usually attached thereto subject, however, to the exclusions stated below and except that this company shall not be liable for loss caused by collision with any other object or by upset.  Breakage of glass and damage caused directly by tornado, cyclone, windstorm, hail, falling aircraft or parts thereof and damage resulting from theft, earthquake, explosion, riot attending a strike, insurrection, or civil commotion, shall not be deemed a loss caused by collision or upset."

The insurer defended on the ground that there was no windstorm on the occasion in question within the meaning of such provision in the policy and that the damage claimed was the result of a collision between the automobile and the tree, within the meaning of the term "collision" as used in the policy excluding liability for loss or damage caused thereby.  There was a verdict for the plaintiff.  The defendant's motion for a new trial was overruled, and it excepted.

The jury was authorized to find from the evidence that on October 21, 1941, between 11:30 and 11:45 at night, the plaintiff was driving the automobile, a Buick 1941 six-passenger sedan, at

a speed of about fifty miles an hour along a state highway about eleven miles north of Cuthbert on his way home from Fort Benning. A "good brisk wind" was blowing out of the west. This caused the insured to close the windows of his car, which he would not have done, except for the wind. The automobile was traveling south. About a mile north of Pataula Creek in Stewart County, there was a "little dip" in the road. A large pine tree stood beside the road at the foot of the incline. The distance from the top of the rise to the location of the tree was about one hundred and fifty yards. The automobile lights were in good order and burning brightly. There was no obstacle in the road. As the automobile approached the place where the tree stood, and when some thirty feet away, the tree suddenly began falling, and although the brakes were "instinctively" and immediately applied, the tree fell on the front end of the automobile and caused the damage sued for.

With respect to the accident, the plaintiff testified, in part, that as he was driving along the highway about a mile north of Pataula Creek, "suddenly a flash came in front of my automobile, and that flash I found out later was a tree falling just at I came to it, blown down by the wind. I had just a third of a second from the time I heard it until it fell on my car. The first thing I saw was a flash go by my automobile. It was this tree. My car didn't hit the tree. I saw the top of the tree as it went by my car. I didn't see the trunk. I saw a flash. As to whether my car ran into the tree, or did the tree fall on top of my car,—I tried to explain to you as clearly as I could the impact was at the same time. The whole front end of my car was damaged. I saw the flash in front of me, but the tree didn't hit the top of my car. My car did not run into the tree, they met together. That picture you exhibit to me shows that the bumper and the front end is smashed back in. The tree fell right at the front of the car as I got there. It dropped right on the front as I got there. That tree was still in motion when we got together. My car did not collide with a moving object."

The policy covered any loss or damage to the automobile except "loss caused by collision or upset;" and there was an exception to this in that damage caused directly by windstorm was not to be deemed a loss caused by collision or upset. The rules governing the construction and interpretation of contracts generally are applicable to a policy or contract of insurance. The words employed

in a contract of insurance are to be taken and understood in their plain, ordinary, usual, and popular sense, rather than according to the meaning given them by lexicographers or persons skilled in the niceties of language. Also, it is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer. The policies are prepared by the company by experts and legal advisers acting in the interest of the company, and the insured has no voice in the selection and arrangement of the words employed. 32 C. J., Insurance, §§ 257, 261, 265, 266; *Johnson* v. *Mutual Life Ins. Co.,* 154 *Ga.* 653 (2) (115 S. E. 14) ; *Liverpool &c. Ins. Co.* v. *Georgia Auto &c. Co.,* 29 *Ga. App.* 334, 347 (115 S. E. 138) ; *State Mutual Life Ins. Co.* v. *Forrest,* 19 *Ga. App.* 296 (91 S. E. 428) ; *Arnold* v. *Empire &c. Insurance Co.,* 3 *Ga. App.* 685, 695 (60 S. E. 470). Furthermore, any exception in a policy of insurance altering the terms of general liability is to be taken and construed most strongly against the insurer. *Insurance Company of North America* v. *Samuels,* 31 *Ga. App.* 258 (120 S. E. 444) ; *Empire Life Ins. Co.* v. *Einstein,* 12 *Ga. App.* 380 (77 S. E. 209).

Whether or not the damage to the plaintiff's automobile was caused directly by "windstorm" within the meaning of that term as used in the policy of insurance was a question for the jury to determine. In order to solve that question it was necessary for the jury to determine from the facts and circumstances whether or not the tree was blown down by the wind, and if so, whether such wind was of sufficient force and velocity as to amount to a "windstorm" within the meaning and intention of the policy.

We think the evidence was sufficient to authorize the jury to find that the wind blew the tree down, and that it either fell on the front end of the plaintiff's automobile, or the impact between the falling tree and the passing automobile was made when each of these objects simultaneously reached the same place in the road and while they were both still moving. In either instance, it may safely be said that the wind, whatever its force and velocity may have been, was the primary cause of the damage to the plaintiff's automobile, and that it was that instrument of nature that caused the tree to fall and inflict the damage to the car involved. Was the contact between the falling tree and the passing automobile a "collision" as contemplated by the policy? The plaintiff in error con-

tends that it was, and that the loss was not covered by the policy. The defendant in error contends that the damage to his automobile was caused directly by the wind blowing the tree down and its striking his car as above stated, and that the contact between the falling tree and the passing automobile, under the terms of the policy, was not to be deemed a collision. In other words, he contends the accident in question comes within the exception to the exception in the policy excluding loss from collision, in that the damage to his car was caused directly by windstorm.

Counsel for the plaintiff in error in a very thorough and exhaustive brief have cited many cases from other jurisdictions dealing with the term "collision" as used in insurance policies, but none of these cases deals with a state of facts as presented in the present case, or with the particular provisions as contained in this policy. Many of those cases, however, do hold that an object falling on an automobile constitutes collision within the coverage of a policy insuring against collision with another object. Among such cases is that of Universal Service Co. v. American Insurance Co., 213 Mich. 523 (181 N. W. 1007, 14 A. L. R. 183), where it was held that "injury to an automobile truck by the falling upon it of a loaded scoop of a steam shovel engaged in loading the truck," was the result of "collision" as contemplated by the policy. Another is the recent case of Teitelbaum v. St. Louis F. & M. Ins. Co., 296 Ill. App. 327 (15 N. E. 2d, 1013), holding that where a person either jumped or fell from an upper story of a building and landed upon an automobile parked below, the damage resulting to the automobile was caused by "collision" as that term was used in a policy similar to the policy in the present case. However, the authorities in other jurisdictions are in conflict as to whether an object falling on an automobile constitutes collision within the coverage of a policy insuring against collision with another object. Among the cases holding that such an occurrence does not constitute collision is O'Leary v. St. Paul Fire &c. Ins. Co. (Tex. Civ. App.) 196 S. W. 575, where it was held that under a policy insuring an automobile against collision with any other vehicle or object, the plaintiff could not recover for damages to his automobile caused by the second floor of the garage in which the automobile was kept falling upon it, as the floor falling on the automobile was not a "collision" with such an object as contemplated by the policy. In the opinion

in that case it was said: "The car was in a garage. The second floor of the building or garage falling upon the car caused the damage. Surely it can not be said that it was the intention of the parties, as ascertained from the terms of the policy, that the word 'collision' was broad enough to cover such damage as occurred in the instant case, and that appellee would be called upon to pay a loss caused by the falling of a building upon the car while the car was being left in the same."

In American Automobile Ins. Co. *v.* Baker (Tex. Civ. App.) 5 S. W. 2d, 252, it was held that a clause of an automobile policy insuring against loss or damage from accidental collision did not cover damage from hail, since in the usual and popular understanding of the term a "collision" does not result from a force of gravity alone, especially when unaided by any human agency. In the course of the opinion the court said: "We do not speak of falling bodies, such as sleet or hail, as colliding with the earth. In common parlance, the apple falls to the ground; it does not collide with the earth. So with all falling bodies, especially where the fall is purely the result of the laws of nature, such as snow, rain, sleet and hail. We speak of the descent of such bodies as a fall to the earth, and not a collision with it. In the usual and popular understanding of the term, a collision does not result, we think, from the force of gravity alone, especially when unaided by any human agency contributing thereto." See, also, Bell *v.* American Ins. Co., 173 Wis. 533 (181 N. W. 733, 14 A. L. R. 179).

In *Hardware Mut. Ins. Co.* v. *Sparks,* 57 *Ga. App.* 830 (196 S. E. 915), this court was called upon to construe a policy insuring against accidental collision, where a storm blew away the garage in which the automobile was stored, and by its force caused a telephone pole to fall upon and damage the automobile. This court held that the pole falling upon the automobile was not a "collision" as contemplated by the policy. In reaching that conclusion, the court noted that there were adjudications sustaining recovery for damage caused by an object falling upon an automobile insured against collision, citing certain cases, and said in its opinion, "while the word 'collision' as defined by lexicographers might be strained to include any impact of one body with another, the word in an insurance policy must be construed in accordance with what the parties to the contract must reasonably be said to have con-

templated as to coverage;" and added, "when the one object descends upon the other we do not speak of it as colliding with the second but as falling upon it."

The plaintiff in error contends that the *Sparks* case is distinguishable under its facts from the present case, and it is pointed out that the automobile in that case was stationary, whereas in the case at bar, both the automobile and the falling object were in motion at the time of contact, and it is argued that the meeting of the two at the point of contact was a collision of the two objects. But irrespective of whether the fact that the automobile here involved was in motion when the tree fell on it, or whether both of these objects were in motion when the impact between the two occurred differentiates it from the *Sparks* case, it is distinguishable from that case in that the plaintiff here predicated this case on the theory that the damage to his automobile was caused directly by windstorm, and under the provisions of the policy, the impact between his car and the falling tree was not to be deemed a collision, and consequently his loss was covered by the policy. The plaintiff in error contends that the evidence was not sufficient to show that the tree was blown down by a windstorm, and there is considerable discussion in the briefs of counsel as to the meaning and definition of "windstorm," and what kind of a wind it takes to constitute a "windstorm." But regardless of the technical definition of "windstorm," or the meaning of that term as defined by lexicographers, we think it was a question for the jury to determine whether or not the damage to the plaintiff's automobile was caused directly by windstorm within the meaning and intention of that term as used in the policy.

Under the law and the evidence, we think the jury was authorized to find that the impact between the plaintiff's moving automobile and the falling tree was not to be deemed a "collision" within the meaning and intention of the policy, in that such impact and damage resulting therefrom to the plaintiff's automobile was caused directly by windstorm within the meaning and intention of such term as used in the policy and that the loss was covered by the policy.

■ It was not error, as contended in ground 4 of the amended motion, for the court, after giving in charge to the jury a request by the defendant as to the meaning or definition of "windstorm,"

to add thereto the following: "I charge you further, gentlemen, in addition to that, if you find that the wind blew hard enough to blow a tree down, then that would be the same as a windstorm, if the wind was that hard. That is a question for your determination in this case."

■ It was not error, as complained of in special ground 5, for the court to fail, upon request, to charge the jury that if, while the plaintiff was driving his car along the highway, the front part of his car struck or came in contact with a tree which was falling in the road at that time, then that would be a collision within the provision of the policy exempting the insurance company from liability for loss resulting from a collision. Such charge would have amounted to a direction of a verdict for the defendant.

■ The charge complained of in ground 6 was not error for any reason assigned.

■ The verdict being authorized by the evidence, and no harmful error of law appearing, the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., dissents.*