## 21310. CENTRAL GEORGIA ELECTRIC
## MEMBERSHIP CORPORATION v. GEORGIA
## POWER COMPANY.

Argued July 10, 1961—Decided September 7, 1961.

*Christopher & Futral, J. O. Futral, Arnall, Golden & Gregory, Cleburn E. Gregory, Jr.,* for plaintiff in error.

*Troutman, Sams, Schroder & Lockerman, Tench C. Coxe, Miller, Miller & Miller, Wallace Miller, Jr.,* contra.

*Robt. D. Tisinger,* for parties at interest.

ALMAND, Justice. The judgment under review is one denying a prayer for an interlocutory injunction and declaring the rights of the parties under a prayer for declaratory judgment.

The main and controlling issue is the proper construction of a provision in a contract between the parties. The trial court decided the issue in favor of the defendant.

The essential facts are undisputed. The plaintiff, Central Georgia Electric Membership Corporation No. 5 (hereinafter referred to as "Central"), entered into a contract with the Georgia Power Company (hereinafter referred to as "Georgia"), in June 1956, for primary electric service for a maximum demand of 625 kilowatts for the purpose of distribution to its members in Monroe County and adjacent counties. At that time Central maintained a transmission line and was supplying electric energy service to one M. D. Lundy, owner of approximately 68 acres of land. In April 1960, the Riverside Golf and Country Club Inc. (hereinafter referred to as "Riverside"), purchased this tract from Lundy for the purpose of erecting a club house and constructing a golf course thereon. Riverside has never been a customer of Central. Georgia notified Central that Riverside had made application to it to supply electric power to the club and to serve the club property. Georgia would have to construct a transmission line paralleling Central's

transmission line. The club house and golf shop of Riverside would be located on the premises, formerly owned by Lundy, near the residence thereon now being served with electric power by Central.

Paragraph 11 of the service contract between Central and Georgia provided: "Neither party, unless ordered so to do by a properly constituted state regulatory authority, shall duplicate the other's facilities, except insofar as such duplication shall be necessary in order to transmit electrical energy between unconnected points on its lines. Neither party, unless ordered so to do by a properly constituted state regulatory authority, shall distribute or furnish electrical energy to anyone who, at the time of the proposed service, is receiving electric service from the other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system; provided, however, the Company shall have the right to serve direct any unserved or new customer, having a demand of 100 kilowatts or more, when Company is requested to do so by such customer. . ."

Central asserts that Georgia's contract with Riverside violates this provision of the contract in that (a) the erection of the transmission line by Georgia will constitute a duplication of Central's facilities, (b) the furnishing of electric service to Riverside on the premises will constitute the distribution or furnishing such service to someone who at this time is receiving electric service from Central, and (c) the furnishing of such service to Riverside will constitute the distribution or furnishing of such service to someone whose premises are capable of being served by the existing facilities of Central without extension of its lines, and Riverside will not have a demand of 100 kilowatts or more. The evidence discloses that Georgia has not been ordered by the Georgia Public Service Commission to furnish Riverside with electric service; that the transmission line from Highway 87 to the Riverside premises was constructed in 1939; that the transmission line Georgia proposes to construct would run from Highway 87 to the Riverside premises to serve the club house, the pro-golf shop and a pump at three separate locations; and that its proposed main transmission line would

parallel the existing transmission line of Central. As to whether the demand of Riverside for electric energy would require 100 watts or more, the evidence is in conflict; but the evidence is sufficient to support the court's finding that the demand of Riverside would exceed 100 kilowatts.

The trial court found and decreed: (1) that Riverside had requested and contracted for electric service from Georgia; (2) that Riverside was a new or unserved customer within the meaning of that term as used in the contract; (3) that Riverside will have a demand of 100 kilowatts or more; and (4) that under the contract between Central and Georgia the latter may provide service to Riverside.

We are of the opinion that the court properly construed paragraph 11 of the contract, and its conclusions of fact and law are supported by the evidence. We do not agree with the contention of Central that the proviso or exception in the last quoted sentence of paragraph 11 does not apply to the first sentence providing that neither party, unless ordered by the proper State regulating authority shall duplicate the other's facilities. The entire paragraph deals with duplication of electric service, transmission lines, and service to premises and customers. The proviso in paragraph 11, properly construed, means that where Central is serving a customer or is capable of serving the premises on which the customer resides, Georgia may on request of a new or unserved customer located on the premises having a demand of 100 kilowatts or more serve such customer. This is true even though in rendering such service Georgia has to erect and maintain a transmission line parallel to the line of Central. To construe the proviso as having no application to the first sentence of paragraph 11 would render the provision meaningless. Paragraph 11 of the contract between the parties must be interpreted so as to give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect. Restatement, Contracts, p. 327, § 236(a); 3 Corbin, Contracts, p. 170, § 546.

"If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more

limited and specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former." 3 Corbin, Contracts, p. 176, § 547; See also Restatement, Contracts, p. 327, § 236(c).

It is clear that under the second sentence Georgia, on the request of a new or unserved customer having a demand of 100 kilowatts or more, may contract to render electric service to such new or unserved customer, though such service be on premises then being served by Central. To reach the new or unserved customer Georgia would of necessity have to duplicate the facilities of Central. If the first sentence prohibiting the duplication of facilities is not subject to the proviso of the second sentence, the provision of the second sentence for duplication of facilities to serve a new or unserved customer having a demand of 100 kilowatts or more would never be effective. To illustrate: Suppose A buys a tract of land consisting of 68 acres, where at the time of the purchase, tenant X of the seller is being supplied by Central with electric service and A proposes to build an industrial plant within 100 feet of the tenant house on the tract of land which will require 100 or more kilowatts of electricity to operate, he under the contention of Central would be unable to contract with Georgia, because Central has the facility to serve tenant X whose demand is less than 100 kilowatts.

The judgment under review being correct must be and is

*Affirmed. All the Justices concur.*