**NATIONAL CAR RENTAL SYSTEM, INC., Plaintiff,**

v.

**COUNCIL WHOLESALE DISTRIBUTORS, INC., Defendant.**

**Civ. A. No. 74–3–Alb.**

United States District Court,
M. D. Georgia,
Albany Division.
Dec. 18, 1974.

Albert H. Parnell, Atlanta, Ga., for plaintiff.

Hilliard P. Burt, Albany, Ga., for defendant.

OWENS, District Judge:

National Car Rental System, Inc.[1] (National), filed its diversity jurisdiction complaint against Council Wholesale Distributors, Inc.[2] (Council) seeking to recover the $14,923.35 fair market value of a semi-tractor and trailer rig leased[3] from National by Council and wrecked by Council's driver, Bobby Sherman.

The pleadings, depositions and answers to interrogatories together with the affidavits show that the defendant's driver, Bobby Sherman, departed driving the leased rig from somewhere near Akron, Ohio, and around ten o'clock at night stopped at a Lexington, Kentucky, interstate highway ramp to pick up two teen-age boys who were hitchhiking south. He told the boys "he was pretty tired and he needed somebody to talk to to keep him awake." (Deposition of Steve Lawson at 11). About an hour later the driver stopped at a truck stop and got something to eat. They continued south and after crossing into Tennessee pulled off and into a roadside fireworks place remaining there about an hour while the driver slept. The boys at the direction of the driver woke him up, and they continued south. Sometime later—"maybe half an hour or something"—(Deposition of Ray Peters at 13), the driver stopped at a restaurant, Ray Peters went in and got french fries and coffee for him and he slept about twenty minutes. Then the driver started again.

Around eight o'clock in the morning defendant's driver with his hitchhikers still aboard was proceeding south on I-75 in the vicinity of Calhoun, Georgia. Defendant's driver was in the right-hand lane and ahead of him was another semi-tractor and trailer rig. Seated to

1. A Minnesota corporation whose principal office and place of doing business is in Minneapolis, Minnesota.

2. A Georgia corporation whose principal office and place of doing business is in Albany, Georgia.

3. National's lease form as it was before execution is attached as Exhibit A and as executed by National and Council's employee Bobby Sherman for each of the rental units in question are attached as Exhibits B and C.

the right of defendant's driver was hitchhiker Ray Peters; hitchhiker Steve Lawson was sleeping in the sleeper berth. As Ray Peters testified: "I was laying with my head over the window and I looked up and I seen this green truck about a hundred yards or something like that . . . " travelling the same direction that we were on the interstate highway. "I kept staring at that truck and we got close to it. I looked over at the driver and looked at the truck." I didn't think the driver gave any acknowledgment that he had seen the truck. He "was a little slumped but it didn't really look like he was asleep too much to me. So then I yelled, watch out, and, you know, he straightened his head up and started to turn the wheel to the left . . . then he clipped the back corner of that truck in front of us. . . . " (Deposition of Ray Peters at 15, 16). The leased rig went to the driver's left into and across the median, into and across the northbound lane and off the side of the highway into two trees. The tractor and trailer were damaged beyond repair, and the driver was killed. Both hitchhikers received only minor injuries.

National contends that Council's employee by (a) driving more than 10 hours without resting for eight hours before continuing again; (b) driving in a fatigued condition, and (c) giving a ride to two hitchhikers violated Department of Transportation Regulations §§ 392.3,[4] 392.60 [5] and 395.3.[6] National further contends that Council's driver violated certain motor vehicle laws of the State of Georgia. These actions National states violated Council's agreement in paragraph "(3) that he will not cause or permit the vehicle to be used in violation of any local, county, state or federal law, ordinance or regulation. . . .", and thus makes Council responsible for the loss in question because of Council's agreement "(12) to release, indemnity and hold Lessor harmless from and against: . . . (c) all loss, damage, cost and expense resulting from customer's violation of any terms of this agreement or breach of customer's convenants as expressed herein."

4. Sec. 392.3 provides: "No driver shall operate a motor vehicle, and a motor carrier shall not require or permit a driver to operate a motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, *through fatigue*, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the motor vehicle. However, in a case of grave emergency where the hazard to occupants of the vehicle or other users of the highway would be increased by compliance with this section, the driver may continue to operate the motor vehicle to the nearest place at which that hazard is removed." (emphasis added).

5. Sec. 392.60 provides: "Unauthorized persons not to be transported.

"Unless specifically authorized in writing *to do so by the motor carrier under whose* authority the motor vehicle is being operated, no driver shall transport any person or permit any person to be transported on any motor vehicle other than a bus. . . . No written authorization, however, shall be necessary *for the transportation of*:

"(a) Employees or other persons assigned to a vehicle by a motor carrier;

"(b) Any person transported when aid is being rendered in case of an accident or other emergency;

"(c) An attendant delegated to care for livestock."

\* \* \* \* \*

6. Sec. 395.3 provides: "Maximum driving and on-duty time.

"(a) Except as provided in paragraphs (c) and (e) of this section and in § 395.10, no motor carrier shall permit or require any driver used by it to drive nor shall any such driver drive more than 10 hours following 8 *consecutive hours off duty* or drive for any period after having been on duty 15 hours following 8 consecutive hours off duty: Provided, however, That drivers using sleeper-berth equipment, or off duty at a natural gas or oil well location, may cumulate the aforementioned total of at least 8 hours off duty in two periods of at least 2 hours each, resting in a sleeper berth, as defined in § 395.2(g), or resting while off duty in other sleeping accommodations at a natural gas or oil well location."

Defendant responds by contending that National charged and defendant paid for collision and comprehensive coverage without any deductible as shown by the collision damage waiver which Council accepted, to wit:

"In consideration of the C.D.W. rate agreed upon herein, lessor agrees to relieve customer of liability for damages caused by collision as provided in paragraph 11 on page 1 hereof, but customer shall be fully liable for all damages of any nature if the vehicle described herein shall be operated in violation of any of the provisions of this rental agreement and for all overhead damages. CUSTOMER ACCEPTS OR DECLINES PURCHASE OF C.D.W. AT RATE SPECIFIED. C.D.W. IS APPLICABLE ONLY IF ACCEPTED. IF DECLINED—DEDUCTIBLE IS $500 FOR VAN TRUCKS—$1,000 FOR TRACTOR, TRAILER OR REFRIGERATED VAN."

that National indicated on the front of the agreement "G ☒ NATL. SUPPLIES INSURANCE" and that the term "operated" in the Collision Damage Waiver is plainly not intended to encompass the previously quoted portion of paragraph 3 which according to Council, restricts the "use" but not the "operation" of the vehicle. Council further contends that whatever its driver did or failed to do was done in the operation of National's vehicle and was not done in using National's vehicle. Therefore Council says National's contentions are without merit.

■ "The construction of a contract is a question of law for the court. Where any matter of fact is involved (as the proper reading of an obscurely written word), the jury should find the fact." 1933 Georgia Code Annotated §

20–701. When there is an ambiguity in a written contract, its construction using rules of construction laid down by the Supreme Court of Georgia, is still a matter for the court. Only if an ambiguity remains after application of the applicable rules of construction, is there a question to be decided by a jury. Chalkley v. Ward, 119 Ga.App. 227, 235, 166 S.E.2d 748 (1969).

The defendant Council has moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. That rule provides that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). For reasons hereinafter stated the court, after considering the entire case, is of the opinion that there is no genuine issue as to any material fact [7] and that the defendant is entitled to a judgment as a matter of law.

The contracts in question are identical printed forms authored and prepared by plaintiff National. As printed by National, Exhibit "A" is a seven-copy carbonized snap-out form. The front page denominated ".ORIGINAL" *but not otherwise numbered*, has many blank spaces to be completed, a signature line for the customer and above that signature line the following:

"THIS CERTIFIES THAT I HAVE READ, UNDERSTOOD AND AGREE TO THE TERMS AND CONDITIONS ON PAGE ONE OF THIS AGREEMENT AND ON THIS PAGE AND ACCEPT VEHICLE IN THE CONDITION INDICATED ABOVE:

_____
CUSTOMER"

---

**7.** As to whether or not defendant Council's driver violated Federal Highway Administration, Department of Transportation regulations and certain motor vehicle laws of the State of Georgia, there are genuine issues of material fact. For judgment to be rendered for defendant it is unnecessary to reach or resolve those disputed factual issues. Their existence does not therefore impede the granting of a motion for summary judgment.

Nothing on the front page indicates that on the reverse side in print generally smaller than that used on the front, is an entire page of terms and conditions. The reference to "THE TERMS AND CONDITIONS ON PAGE ONE OF THIS AGREEMENT . . . ." in the absence of an indication that the front of the form is PAGE TWO, means clearly that the terms and conditions are on page one, the first page.[8] While this could be fatal to National's contentions that provisions on the reverse thereof were violated, the court is not granting summary judgment on this basis. Instead the merits of National's claims are considered as if there were a reference to them on the front page.

Defendant Council's employee executed each of them for Council. In executing them Council's employee initialed under the word "ACCEPTS" in the box on the front underneath which appear the aforesaid Collision Damage Waiver provisions. Council was charged and National was paid an additional amount of money for the Collision Damage Waiver (C.D.W.). National did not use Council's "C.D.W." money to purchase or pay for collision insurance; National did not carry or procure such insurance for itself or Council. Instead National deposited Council's "C.D.W." money into a special account which contains all "C.D.W." money collected from all of National's customers and which is used by National to pay for collision damage to its vehicles.

Council's employee did not initial the red X in the box entitled "CUSTOMER TO PROVIDE COLLISION INSURANCE" or the red X in the box entitled "CUSTOMER TO PROVIDE LIABILITY INSURANCE". Under rental conditions there are various blocks designed to be marked if applicable to the transaction. Four of those blocks are marked on Exhibit "B", and three are marked on Exhibit "C". Of those, block "G ☐ NATL. SUPPLIES INSURANCE" is marked on both Exhibit "B" and Exhibit "C" with an X.

■ The Court of Appeals of Georgia in Howkins v. Atlanta Baggage & Cab Co., 107 Ga.App. 38, 42, 129 S.E.2d 158 (1962), in a case where the court was called upon to construe an Avis motor vehicle rental agreement, set forth the basis for construction of such agreements:

"The record shows that this 'Standard Rental Agreement' of Avis Rent-A-Car System was executed on a form 3⅝" x 8⅞" having on one side 12 paragraphs in fine print (paragraphs 10, 11, and 12 having a heading in larger print), and on the other side a form with spaces for certain information to be filled in, including the name, home address, firm name, firm address, and driver's license number of the renter, and lines for 'Signature of Renter' and 'Additional Renter.' Under these lines for signatures is the following: '(subject to terms and conditions on page 1, also printed on reverse side).' Obviously this is a contract which was prepared by experts at the instance of the lessor and adhered to by the renter, who had no voice in its preparation. If there is any doubt about its meaning it must be construed against the lessor. Johnson v. Mutual Life Ins. Co., 154 Ga. 653, 656 (115 S.E. 14); Moorefield v. Fidelity Mut. Life Ins. Co., 135 Ga. 186 (69 S.E. 119); Hill v. John P. King Mfg. Co., 79 Ga. 105, 109 (3 S.E. 445); Mutual Life Ins. Co. of N.Y. v. Camp, 77 Ga.App. 288, 290 (48 S.E.2d 493); Johnson v. U. S. Fidelity &c. Co., 93 Ga.App. 336, 341 (91 S.E.2d 779); Continental Life Ins. Co. v. Wells, 38 Ga.App. 99 (142 S.E. 900).

8. See Caddick Milling Co. v. Moultrie Grocery Co., 22 Ga.App. 524, 96 S.E. 583(1) (1918):

"1. In the construction of a contract, a clause written upon its face, inconsistent with one printed upon the back, will generally be accepted as expressing the intention of the parties, rather than the inconsistent clause printed upon the back."

It should be construed favorably to the renter as it could have been reasonably understood by him. Loftin v. United States Fire Ins. Co., 106 Ga. App. 287, 294 (127 S.E.2d 53)."

█ This National lease agreement construed favorably to Council as it could have been reasonably understood by Council, has the following meaning:

(A) The paragraph on the front entitled "C.D.W." states that if the renter pays the additional amount stated, National agrees to relieve the renter of all liability for collision damage as provided in paragraph 11 on page 1, which states as follows:

"in the event Lessor, notwithstanding any of the other applicable provisions of this agreement, shall be required by statute, ordinance, or other regulation to extend insurance coverage to the Customer such insurance coverage shall be limited to the statutory financial responsibility minimums and shall be excess insurance."

As to collision damage this language is obviously meaningless, so paragraph 11 on page 1 can only be disregarded. We are left with the contractually undefined words "collision damage". There being no definition in the contract, these words are to be construed in accordance with the following rule of construction:

"2. Words generally bear their usual and common signification; but technical words, or words of art, or used in a particular trade or business, will be construed, generally, to be used in reference to this peculiar meaning. . . ." 1933 Georgia Code Annotated § 20–704(2). .

█ While the word collision is a word of common usage, the words collision damage are generally peculiar to the automobile insurance industry and when used in conjunction with the word deductible are especially peculiar to the automobile insurance industry. As a matter of common knowledge automobile insurance policies offer collision coverage and as to such coverage provide for a certain monetary amount as a deductible, an amount to be deducted from a loss—an amount to be paid or absorbed by the policyholder.

█ That the words collision damage as used in this contract are to be construed as used in the automobile insurance business, is further indicated by the fact that they are used in one of a series of three places on the front of this contract, each of which requires the customer to make a choice—(1) whether to accept or decline "C.D.W." (2) whether or not to provide collision insurance (3) whether or not to provide liability insurance—as to a matter of insurance. If the customer elects to provide collision insurance the contract states: ". . . customer acknowledges and agrees: . . . (9) to the following: . . . (b) By endorsement on Page 2 hereof to be liable to Lessor on account of collision losses to vehicles as well as non-collision losses *covered by a standard comprehensive insurance policy* including losses due to fire and theft." If the customer rejects the opportunity to furnish collision insurance by endorsing or signing by the red X, the customer thereby does not agree to be liable for such insured collision losses. Having failed to agree to furnish collision insurance, the customer (Council) could have reasonably understood only that he was not so liable and that since he was not, National was. Further, Council could have reasonably understood only that collision losses were those "covered by a standard comprehensive insurance policy" !!! Read in conjunction with the "C.D.W." clause, Council further could have reasonably understood only that if Council did not furnish collision insurance and become so liable, National was liable under a policy of collision insurance having a deductible of $500 for van trucks and $1,000 for tractor, trailer or refrigerated van, which would be the amount of the customer's responsibility in the event of collision damage and which amount could be decreased to zero

by the payment of the collision damage waiver charge.

As used in automobile insurance policies the scope of collision damage coverage has been considered by the Court of Appeals of Georgia. In Ohio Hardware Mutual Insurance Co. v. Sparks, 57 Ga. App. 830, 196 S.E. 915 (1938), Mrs. Sparks sued on an automobile-insurance policy claiming damages by collision as a result of "a very violent windstorm or tornado [which] blew the garage off and away from the [insured] automobile, causing the falling of a heavy telephone and telegraph cable and telephone post, which post fell on or collided with the plaintiff's automobile and damaged it in a sum claimed." (57 Ga.App. p. 830, 196 S.E. p. 915). The schedule of coverage showed "5. Collision or upset, as defined in paragraph J, page 2. Actual cash value, in excess of $50. (Deductible)". The paragraph referred to defined collision or upset as "accidental collision or upset." (57 Ga.App. p. 831, 196 S.E. p. 915). In construing collision as not including the described happening the court stated, "The coverage of 'collision' in insurance policies was formerly identified mainly with maritime cases. With the coming of automobiles in later years the courts have been called upon to determine liability under collision clauses in automobile-insurance policies. The cases in the main, however, have been those in which the automobile or thing with which it 'collided' was in motion. . . ." (57 Ga.App. p. 831, 196 S.E. p. 916). "And, as was said in the Baker case, supra [American Automobile Ins. Co. v. Baker, Tex.Civ.App., 5 S.W.2d 252], in the usual and popular understanding of the word, a 'collision' could not be said to have resulted from the falling of one object upon another, especially when unaided by any human agency. When the one object descends upon the other, we do not speak of it as colliding with the second but as falling upon it." (57 Ga.App. p. 834, 196 S.E. p. 918).

In 1968 the Court of Appeals in Tuten v. First of Georgia Ins. Co., 117 Ga.App. 409, 160 S.E.2d 903, again construed the collision portion of an automobile insurance policy where an insured parked his automobile on a boat ramp and as a precaution chocked the rear wheels. In spite of the chocks the car slid and slipped backward down the ramp, into and under the water. The policy agreed to pay for "loss, caused by collision of the automobile with another object . . . ." (117 Ga.App. p. 410, 160 S.E. 2d p. 904). The court in agreeing with the plaintiff that his loss was caused by a collision of his automobile with another object, specifically, the water in the river, quoted from a North Carolina case which:

". . . quoted with approval the following excerpt from St. Paul Fire & Marine Ins. Co. v. American Compounding Co., 211 Ala. 593, 595 (100 So. 904, 35 A.L.R. 1018): '*A collision implies an impact, the sudden contact of a moving body with an obstruction in its line of motion. Both bodies may be in motion, or one in motion and the other stationary. Clearly it matters not whether the car or the other object is in motion.* The clause here involved covers all accidental collisions, save those arising from certain extra hazardous uses. In the nature of things, no effort is made to enumerate the accidental collisions covered thereby. No particular kind of accident is in the contemplation of the parties. The peril insured against is in the unforeseen accident; otherwise, there is no accident in the true sense. Neither is there any limitation as to cause of the accidental collision. The force leading thereto may be applied by human agency, or it may be a natural force, to which all our actions and dealing are related. A car, standing on a grade, is usually held in place by the friction of the wheels on the ground. This friction is maintained by brakes. If the brake does not hold, the car starts and proceeds down

grade with accelerated velocity until arrested by collision or otherwise. The sole force in operation is the force of gravity, an ever-present agency, and a continuing peril to a car.

"'An automobile started by an external force, or by force of gravity on failure of the brakes to hold, and running uncontrolled against any object in its path, is in collision with such object.'" *Tuten, supra,* 117 Ga.App. at 411, 412, 160 S.E.2d at 905. (emphasis added).

██ Collision damage as used in the C.D.W. therefore meant damage to the rented vehicles resulting from an impact, the sudden contact of a moving body with an obstruction. Both bodies may be in motion, or one in motion and the other stationary. It matters not whether the rented vehicles or the other object is in motion.

██ The tractor-trailer rig was therefore damaged by a collision as that word is used in the subject rental contract.

(B) The Collision Damage Waiver paragraph further specified that the Collision Damage Waiver does not relieve the customer (Council) of liability for damages caused by collision in two instances:

(i) "IF THE VEHICLE DESCRIBED HEREIN SHALL BE OPERATED IN VIOLATION OF ANY OF THE PROVISIONS OF THIS AGREEMENT"

(ii) "AND FOR ALL OVERHEAD DAMAGES"

Since overhead damages are not involved, we are concerned only with the meaning of (i).

In authoring the contract in question and in placing restrictions on what Council could do with the rented vehicle, National chose the words "use", "operated" and "drive". They are found in different places and contexts on the front (National's page two) and back (National's page one) of the printed form.

On the front the word "use" is found in item (17), to wit: "USE PERMITTED IN STATES OF", and in its past tense is found in item (11), to wit: "TIME USED". The word "drive" is found in its past tense in item (12), to wit: "MILES DRIVEN". The word "operated" is found only in the C.D.W. clause.

On the back side these words are used in various places. Look at all of them beginning with the first paragraph:

"(1) That the vehicle will at all times during the contract be *operated* under Customer's or his employees exclusive custody, condition and control. Customer or the driver of the Vehicle shall in no event be or be deemed the agent, servant, or employee of Lessor in any manner for any purpose whatsoever.

"(2) To the following:

. . . . . .

(e) To *operate* said Vehicle only within confines of those states necessary to travel from the point where Vehicle has been rented to that point listed as destination on page 2 of this rental agreement.

(f) To obtain and pay for any necessary trip permits, ton mile taxes, licenses or special fees, or taxes required by any federal, state, county or municipal law, ordinance or regulation as may be necessary by reason of Customer's *driving* said Vehicle into or through any areas requiring such special permits, license or fees, or by reason of Customer's *use* of said Vehicle for any purpose other than transportation of Customer's non-commercial property.

"(g) To file or assist in filing any and all returns or reports required by any agency or governmental body as a result of the *use* or *operation* of the vehicle.

"(3) That he will not cause or permit the Vehicle to be *used* in violation of any local, county, state or fed-

eral law, ordinance or regulation or permit the Vehicle to be *operated* by any person who is not properly licensed or who is under the age of 21.

\* \* \* \* \* \*

"(5) Not to disconnect or tamper with the odometer . . . if the same shall show signs of having been tampered with or disconnected, Customer shall at the option of Lessor pay charges for the *use* of said Vehicle at the within specified mileage rate on the basis of forty (40) miles for each hour said Vehicle was in Customer's possession.

\* \* \* \* \* \*

"(12) To release, indemnify and hold Lessor harmless from and against:

(a) Any claims or causes of action for death or injury to persons or loss or damages to property in excess of the limits of liability insurance provided hereof, whether provided by Lessor pursuant to paragraph 8, or Customer pursuant to paragraph 9 or paragraph 10 and arising out of or caused by the *use* of the vehicle rented hereunder, or which Lessor shall be required to pay as a result of any statutory requirements of insurance and which Lessor would not otherwise, pursuant to the terms thereof, be required to pay.

\* \* \* \* \* \*

"(d) Loss or damage to the Vehicle during the rental period, provided, however, that Customer's liability shall be limited to $500 for a van type truck or $1,000 for each tractor, trailer or refrigerated van truck, or Customer by initialing the Collision Damage Waiver section on page 2 hereof, agrees to pay an additional fee therefore [sic] and Lessor agrees to waive all claims against Customer for damage by collision to the Vehicle. Notwithstanding any of the foregoing, Customer shall be fully liable for all damage to the leased Vehicle if the Vehicle is *used*,

*operated* or *driven* in violation of the provisions of this contract, or if the loss or damage results from collision with the structure of any underpass or other object because of insufficient clearance, whether of height or width. The provisions of this subparagraph 12(d) shall not apply and Customer shall be liable for all damages to said Vehicle, provided the Customer by endorsement on page 2 hereof agrees to provide Collision and Physical Damage Insurance.

\* \* \* \* \* \*

"(h) All damages to property resulting from the *operation* of the Vehicle off a public road.

"(i) Any citations, fines or penalties including forfeiture or seizure resulting from *use* of the vehicle during the term of this contract.

As the word "operated" in the "C.D. W." clause could have been reasonably understood by Council, it refers to the specific restrictions in the lease agreement as to the operation of the leased vehicles. The word operate is italicized by the court whenever used by National in the aforesaid quoted portions of the subject agreement. National did not use "operate" to restrict operation "in violation of any local, county, state or federal law. . . ."

■ National of course argues that use, operate and drive as set forth by them in this agreement are synonymous. If they are synonymous, there would have been no necessity for the author to use them separately as he did. If National intended them to be understood by Council synonymously, National could have so stated in its agreement. " 'The general rule of construction applicable to all writings, constitutions, statutes, contracts, and charters, and even to ordinary conversations, is this: that general and unlimited terms are restrained and limited by particular recitals, when used in connection with them.' Torrance v. McDougald, 12 Ga. 526(2)." McCann v. Glynn Lumber Co., 199 Ga. 669, 677,

34 S.E.2d 839 (1945); see also Central Georgia Electric Membership Corp. v. Georgia Power Co., 217 Ga. 171, 121 S.E.2d 644 (1961).

■ It could be argued that the words "if the vehicle is used, operated or driven in violation of the provisions of this contract" as set forth in paragraph (12)(d), clearly demonstrate National's intent to use them interchangeably and that Council could have thus reasonably understood. That National preceding (12)(d) used each word separately and distinctly and then in (12)(d) chose to use each of them in a clause referring to liability resulting from non-compliance with such restrictions, indicates more than anything else, that National intended to place different restrictions on operation, different restrictions on use, and different restrictions on driving. It vividly demonstrates that National recognized their differences and recognizing them, gathered them together in one place—(12)(d).

■ National wrote its contract and as written Council could have reasonably understood that the word "operated" as used in the "C.D.W." clause, to wit:

"In consideration of the C.D.W. rate agreed upon herein, lessor agrees to relieve customer of liability for damage caused by collision as provided in paragraph 11 on page 1 hereof, but customer shall be fully liable for all damages of any nature if the vehicle described herein shall be operated in violation of any of the provisions of this rental agreement and for all overhead damages.
CUSTOMER ACCEPTS OR DECLINES PURCHASE OF C.D.W. AT RATE SPECIFIED. C.D.W. IS APPLICABLE ONLY IF ACCEPTED. IF DECLINED—DEDUCTIBLE IS $500 FOR VAN TRUCKS—$1,000 FOR TRACTOR, TRAILER OR REFRIGERATED VAN."

referred to the sections already discussed in which National restricted Council's operation of the leased vehicles and not to the sections which restricted the use or driving of the vehicle. Assuming that National's allegations of violations of regulations and laws by Council's driver are true, those violations are prohibited only by National's use restriction, to wit: "(3) That he will not cause or permit the vehicle to be used in violation of any local, county, state or federal law, ordinance or regulation. . . ." Their violation does not cause Council to become liable under the "C.D.W." clause since only operational restriction violations can do that.

If National's argument that the word "used" in (3) was intended by it and reasonably understood by Council to also mean operated in violation of any law or regulation, was valid, the court would be put in the position of saying that Council knowingly entered into a contract under the terms of which it would become 100 percent responsible for *all* damages to the rented vehicles if its driver exceeded the speed limit as set by law or violated any of the many other vehicular laws that are routinely violated particularly by those who drive on our interstate highways. The court would be saying that if Council drove 56 m.p.h. on our 55 m.p.h. speed limited interstate, the one mile per hour would cause complete responsibility to shift from National to Council. The contract does not so provide. For it to so provide would produce an unreasonable result.

■ Since the contract as reasonably understood by Council places responsibility for all collision damage on National except when the vehicle is operated in violation of any of the provisions of the agreement and since it was not operated in violation of any of the provisions of the agreement, financial responsibility for the collision losses sued for rests 100 percent upon the plaintiff National and does not rest upon the defendant Council. Council is therefore entitled to judgment as a matter of law.

Summary judgment is granted for defendant Council Wholesale Distributors, Inc.

**LESSOR**

NAT'L CAR RENTAL SYSTEM, INC.
TRUCK RENTAL — (404) 622-1011
1257 HENRICO ROAD
CONLEY, GEORGIA 30027

**NATIONAL CAR RENTAL**
truck rental and leasing

(02) CROSS REF RA# (03) CITY NO STA. NO. (01) RA #
**657** № **T245492 5**

RENTER IS RESPONSIBLE FOR ALL OVERHEAD DAMAGES WHETHER OR NOT THE COLLISION DAMAGE WAIVER IS ACCEPTED

MILEAGE DETERMINED BY READING ODOMETER/HUBODOMETER
(04) TIME IN — A.M. P.M.
(05) WILL RETURN ON
(06) MILES IN
(07) TIME OUT — A.M. P.M.
(08) VEH. NO.
(09) VEH. LICENSE PLATE
(10) MILES OUT
(11) TIME USED
COMMODITY HAULED
(101) MAX PA'LD. LEGALLY LOADED
(12) MILES DRIVEN
MILES @ (13)
TRIP REPORT # OUT IN (14) VEHICLE WILL BE RETURNED TO
DAYS @ (15)

**CREDIT CARD IMPRINT**

(40) BILLING INFORMATION ONLY
(16) DESTINATION CITY STATE
WEEKS @ (18)
(17) USE PERMITTED IN STATES OF
HOURS @ (19)
(20) H C K C.B. AMER. EXPRESS A.X. CARTE BLANCHE B.L. DINER D.N. BANK AMERICA B.A. AMERICAN OIL A.M. MASTER CHARGE M.C. OTHER
(21)
MINIMUM RENTAL - ONE DAY
REEFER HRS. @ /HOUR
$ OUT IN
(22)
SUB-TOTAL
(23)

**BILLED DIRECT**
(41) NAME
(42)
(43)
(44)
(45) STATE (46) ZIP
CITY

PADS / DOLLIES / OTHER
$
TOTAL
$
TOTAL TIME AND MILEAGE OR MINIMUM CHARGE (24)
ADDITIONAL EQUIPMENT CHARGE (25)
ACCEPTS C.D.W. DECLINES C.D.W. C. Days Weeks (26)

NOTE PHYSICAL DAMAGE BY "H" - HOLE "S" - SCRATCH "D" - DENT

| OUT | | | AREA | IN | | |
|---|---|---|---|---|---|---|
| O K | N O | | LIGHTS | O K | N O | |
| | | | AIR COND. | | | |
| | | | DOORS | | | |
| | | | WINDOWS | | | |
| | | | MIRRORS | | | |
| | | | REFLECTORS | | | |
| | | | FIRE EXT. | | | |
| | | | FLAGS | | | |
| | | | FUEL DIR. | | | |
| | | | CREDITCARD | | | |
| | | | PERMIT BOOK | | | |
| | | | FUEL TANK | | | |
| | | | AIR HOSES | | | |
| | | | LIFT GATE | | | |
| | | | WIRING | | | |
| | | | TIRES | | | |
| | | | FLAPS | | | |
| | | | TARPS | | | |
| | | | DOLLIE | | | |
| | | | SLIDER | | | |
| | | | REEFER | | | |

BODY DAMAGE CHECK SHEET

FRONT REAR
RIGHT SIDE LEFT SIDE
REAR FRONT FRONT
RIGHT SIDE LEFT SIDE
FRONT LEFT SIDE
REAR FRONT RIGHT SIDE

COLLISION DAMAGE WAIVER (C.D.W.) IN CONSIDERATION OF THE C.D.W. RATE AGREED UPON HEREIN, LESSOR AGREES TO RELIEVE CUSTOMER OF LIABILITY FOR DAMAGES CAUSED BY COLLISION AS PROVIDED IN PARAGRAPH 11 ON PAGE 1 HEREOF, BUT CUSTOMER SHALL BE FULLY LIABLE FOR ALL DAMAGES OF ANY NATURE IF THE VEHICLE DESCRIBED HEREIN SHALL BE OPERATED IN VIOLATION OF ANY OF THE PROVISIONS OF THIS RENTAL AGREEMENT AND FOR ALL OVERHEAD DAMAGES. CUSTOMER ACCEPTS OR DECLINES PURCHASE OF C.D.W. AT RATE SPECIFIED. C.D.W. IS APPLICABLE ONLY IF ACCEPTED. IF DECLINED - DEDUCTIBLE IS $500.00 FOR TRUCKS - $1,000 FOR TRACTOR, TRAILER OR REFRIGERATED VAN

Customer to Provide Collision Insurance X
Customer To Provide Liability Insurance X

(36) CASH / CHECK DEPOSIT $
(37) CASH REFUND UNUSED DEPOSIT $
(38) TOTAL REFUND $

REFUND RECEIVED BY: X

SUB-TOTAL (27)
TAX (28)
MISC. CHG. % (29)
MISC. CHG. (30)
TOTAL CHARGES (31)
LESS GAS, ETC. (32)
NET CHARGE (33)
LESS DEPOSIT (34)
AMOUNT DUE (U.S. $) (35)
PAID BY: CASH OR CHECK / BILL DIRECT / CREDIT CARD CHGE. (39)
CUSTOMER INITIALS X

| OUT | SIGN | IN |
|---|---|---|
| | CUSTOMER INITIALS | |
| | NATIONAL INITIALS | |

CUSTOMER IS RESPONSIBLE FOR CONDITION OF UNIT — EXCEPTIONS LISTED ABOVE.
THIS CERTIFIES THAT I HAVE READ, UNDERSTOOD AND AGREE TO THE TERMS AND CONDITIONS ON PAGE ONE OF THIS AGREEMENT AND ON THIS PAGE AND ACCEPT VEHICLE IN THE CONDITION INDICATED ABOVE

X _____ CUSTOMER

DRIVERS LICENSE NO. STATE EXPIRATION DATE
CURRENT ADDRESS CITY
STATE ZIP PHONE NO CREDIT APPROVED BY
COMMENTS

(98) RENTAL CONDITIONS
A ☐ DAILY RENTAL
B ☐ LEASE CUSTOMER-EXTRA UNIT
C ☐ LEASE CUSTOMER - SUB UNIT
REPLACES T
D ☐ NON-REVENUE MILEAGE
E ☐ WITH FUEL
F ☐ WITHOUT FUEL
G ☐ NATL. SUPPLIES INSURANCE
H ☐ CUSTOMER SUPPLIES INS.

(99) EQUIPMENT TYPE
A ☐ E-LINES — PANELS
B ☐ S/A STAKE FT.
C ☐ S/A VAN FT.
D ☐ S/A REEFER FT.
E ☐ S/A TRACTOR
F ☐ S/A SLEEPER
G ☐ T/A TRACTOR
H ☐ T/A SLEEPER TRACTOR
I ☐ 40' & OVER VAN TRAILER
J ☐ 40' & OVER REEFER TRAILER
K ☐ CONVERTER DOLLY
L ☐ DOUBLE VANS
M ☐ 40' & OVER FLAT TRAILER
N ☐
O ☐

CITY NAME AND ADDRESS
**National Car Rental System, Inc. Truck Rental — 657 P. O. Box 35187 Minneapolis, MN 55435**

PREPARED BY DRB/MRB DATE
COMPUTED BY
(01) RENTAL AGREEMENT NO.
№ **T245492 5**
This Rental Agreement No. Must Appear On All Payments And Correspondence.

PAGE 2

FORM 7000 (REV. 8/72)

**EXHIBIT "A"**

**ORIGINAL**

NATIONAL CAR RENTAL SYSTEM, INC.
TRUCK DIVISION RENTAL AGREEMENT
TERMS AND CONDITIONS

Lessor identified on page 2 hereby rents to the Customer (herein called "Customer") the Vehicle (herein called "Vehicle") which whenever used hereafter includes all tires, tools, accessories and equipment, described on page 2, subject to all terms and conditions of page 1 and 2 of this rental agreement, in consideration whereof Customer acknowledges and agrees.

(1) That the Vehicle will at all times during this contract be operated under Customer's or his employees exclusive custody, condition and control. Customer or the driver of the Vehicle shall in no event be or be deemed the agent, servant, or employee of Lessor in any manner for any purpose whatsoever

(2) To the following.
(a) That the Vehicle is the property of Lessor
(b) That he has examined the Vehicle and he knows the condition thereof and that same is in good condition and repair except as noted by the Lessor and the Customer on page 2 of this agreement
(c) That he will return Vehicle in the same good condition as when received, ordinary wear and tear excepted, and that he will repair and replace lost, stolen, damaged or broken parts or reimburse Lessor therefore, together with any hauling expense incurred by reason of Customer's use of said Vehicle
(d) That no repairs, adjustments, or replacements of any parts will be made without prior authorization from Lessor
(e) To operate said Vehicle only within confines of those states necessary to travel from the point where Vehicle has been rented to that point listed as destination on page 2 of this rental agreement.
(f) To obtain and pay for any necessary trip permits, ton mile taxes, licenses or special fees, or taxes required by any federal, state, county or municipal law, ordinance or regulation as may be necessary by reason of Customer's driving said Vehicle into or through any areas requiring such special permits, license or fees, or by reason of Customer's use of said Vehicle for any purpose other than transportation of Customer's non commercial property
(g) To file or assist in filing any and all returns or reports required by any agency or governmental body as a result of the use or operation of the vehicle

(3) That he will not cause or permit the Vehicle to be used in violation of any local, county, state or federal law, ordinance or regulation or permit the Vehicle to be operated by any person who is not properly licensed or who is under the age of 21

(4) That any subletting or reletting of the Vehicle without the express written permission of Lessor is prohibited and any such sublease or reletting shall immediately cause termination and cancellation of this contract.

(5) Not to disconnect or tamper with the odometer or hubodometer and if the same shall show signs of having been tampered with or disconnected, Customer shall at the option of Lessor pay charges for the use of said Vehicle at the within specified mileage rate on the basis of forty (40) miles for each hour said Vehicle was in Customer's possession.

(6) To pay for any mechanical damage to the Vehicle caused by, Customer's failure to maintain adequate engine oil pressure as indicated on the oil pressure gauge, or adequate radiator water level, engine overheating, or by reason of any other neglect of necessary servicing or maintenance of said vehicle while under his custody or control

(7) To return the Vehicle to Lessor at Lessor's location from which the Vehicle was delivered to Customer unless a different place of return is specifically authorized in writing Customer shall return the Vehicle on the date designated on page 2 hereof, or if no date for the Vehicle to be returned is designated on page 2 hereof, no later than seven (7) days after the date the Vehicle is rented, which shall be the date inserted in the time out section and on page 2 hereof, provided, however, that if Lessor makes written demand sent by prepaid mail to Customer's address shown on page 2 hereof, Customer shall return the Vehicle at any earlier time specified in such written demand. In the event Customer fails to return the Vehicle to the specified place of return at the time for return provided herein or at any earlier date specified in any written demand by the Lessor, Lessor may take any steps which Lessor may deem reasonable and necessary to recover the Vehicle, including without limiting the generality of the foregoing, entering upon whatever premises the vehicle may be located from time to time for the purpose of retaking possession of the Vehicle without becoming liable for trespass or liable in any way for such entry and retaking Further, in the event Customer fails to return the Vehicle to specified place of return within three days after the time for return provided herein or within three days after the earlier date specified in any written demand by the Lessor, the Lessor may pursue any legal or other remedies available to recover and effect the return of said Vehicle to Lessor's possession, and Customer does hereby release Lessor from, and agrees to indemnify Lessor against all claims for damages which Customer, his agent or employee, sustain as a result of any action taken by Lessor under this paragraph and Customer shall pay Lessor, on demand, its costs and expenses incurred in recovering such Vehicle

(8) In the event Customer does not provide, by endorsement on page 2 hereof, the automobile liability insurance referred to herein or in the event Customer is not also a Customer pursuant to a National Car Rental, Truck Division Truck Lease and Service Agreement herein, then Customer is one of the insured under the insurance policy covering said Vehicle except as otherwise provided herein with respect to trailer only rentals, and Customer agrees that (a) the Customer will comply with all the terms and conditions of said policy, which by this reference thereto, are incorporated herein and made part hereof, (b) except as trailer only rentals to which it does not apply, the insurance policy furnished by Lessor with respect to the Vehicle contains bodily injury and property damage liability coverage with a limit of $250,000 for injury or death sustained by any one person with a total limit of $500,000 for injury or death sustained by two or more persons in any one accident and with a limit of $50,000 for damage to property of third persons resulting from any one accident, provided, however, that the insurance furnished by Lessor does not apply to passengered guests carried in the Vehicle leased hereunder if said Vehicle is a Vehicle of commercial hire registration. Said policy does not cover injuries sustained by the Customer or driver or liability imposed upon or assumed by the Customer or driver under any workmen's compensation act, plan or law or any contract of whatever nature. It is further required that every accident or theft be reported immediately by telephone followed by a written report within forty-eight (48) hours to the station from which the Vehicle is rented If an accident is not reported within forty-eight (48) hours, Customer will be financially responsible for any and all loss and/or damages In addition the Customer or driver must immediately deliver to the station from which the Vehicle is rented as soon as practicable, every process, pleading or paper of any kind relating to any and all claims, suits and proceedings received by Customer or driver. Customer or driver shall not in any manner aid or abet any claimant but shall cooperate fully with the Lessor and/or insurance company in all matters connected with the investigation and defense of any claim or suit, If there is other insurance against any occurrence covered by Lessor's policy, insurance afforded by Lessor's policy shall be deemed excess insurance over and above the applicable limits of all such other insurance in connection with trailer only rentals, Customer is responsible for procuring all bodily injury and property damage liability insurance and all collision and physical damage insurance; and Customer shall procure bodily injury liability insurance coverage with a limit of not less than $250,000 for injury or death sustained by any one person with a total limit of not less than $500,000 for injury or death sustained by two or more persons in any one accident, and property damage liability insurance with a limit of not less than $50,000 for all property damage resulting from any one accident, plus collision and physical damage insurance, and shall hold Lessor harmless from any and all claims for injury to all persons or damage to property resulting or arising out of the use of the trailer, and from any and all expense incurred in the defense of any such claims

(9) To the following·
(a) By endorsement on page 2 hereof to provide automobile liability insurance with Lessor named as an additional insured against all risk of loss or damage to persons or property. This liability insurance to be furnished by Customer shall have limits of not less than $250,000 for injury or death sustained by any one person, with a limit of not less than $500,000 for injury or death sustained by any two persons in any one accident, and a limit of not less than $50,000 for all damages to property resulting from any one accident
(b) By endorsement on Page 2 hereof to be liable to Lessor on account of collision losses to Vehicle as well as non collision losses covered by a standard comprehensive insurance policy including losses due to fire and theft
(c) To indemnify and hold Lessor harmless from any and all claims for injury to all persons or damage to property and from any and all expense incurred in the defense of any such claims.

(10) In the event Customer is also a Customer pursuant to a National Car Rental Truck Lease and Service Agreement under the terms of which the Customer is required to procure and maintain insurance, then such Customer's insurance shall extend to and cover the Vehicle rented hereunder. In the event there are inconsistent or conflicting terms or conditions relating to the insurance provision between this agreement and those set forth in the Truck Lease and Service Agreement, the insurance provision set forth in the Truck Lease and Service Agreement shall control and apply to the Vehicle rented hereunder.

(11) In the event Lessor, notwithstanding any of the other applicable provisions of this agreement, shall be required by statute, ordinance, or other regulation to extend insurance coverage to the Customer such insurance coverage shall be limited to the statutory financial responsibility minimums and shall be excess insurance.

(12) To release, indemnify and hold Lessor harmless from and against
(a) Any claims or causes of action for death or injury to persons or loss or damages to property in excess of the limits of liability insurance provided hereof, whether provided by Lessor pursuant to paragraph 8, or Customer pursuant to paragraph 9 or paragraph 10 and arising out of or caused by the use of the vehicle rented hereunder, or which Lessor shall be required to pay as a result of any statutory requirements of insurance and which Lessor would not otherwise, pursuant to the terms thereof, be required to pay
(b) Any and all losses, damages, costs and expenses incurred by the Lessor or his insurance company because of injury or damage sustained by any occupant of said Vehicle, including without limitation Customer, his employees, agents or representatives or loss or damage to cargo or property owned by or in the possession of Customer, his employees, agents, or representatives.
(c) All loss, damage, cost and expense resulting from Customer's violation of any terms of this agreement or breach of Customer's covenants as expressed herein.
(d) Loss or damage to the Vehicle during the rental period, provided, however, that Customer's liability shall be limited to $500 for a van type truck or $1,000 for each·tractor, trailer or refrigerated van truck, or Customer by initialing the Collision Damage Waiver section on page 2 hereof, agrees to pay an additional fee therefore and Lessor agrees to waive all claims against Customer for damage by collision to the Vehicle Notwithstanding any of the foregoing, Customer shall be fully liable for all damage to the leased Vehicle if the Vehicle is used, operated or driven in violation of the provisions of this contract, or if the loss or damage results from collision with the structure of any underpass or other object because of insufficient clearance, whether of height or width. The provisions of this subparagraph 12-(d) shall not apply and Customer shall be liable for all damages to said Vehicle, provided the Customer by endorsement on page 2 hereof agrees to provide Collision and Physical Damage insurance.
(e) All costs of repossessing the Vehicle, including but not restricted to attorney's fees and court costs incurred in connection therewith.
(f) Any loss or damage to the Vehicle that Lessor may sustain directly or from service required because of extricating and/or towing the Vehicle due to Customer driving the Vehicle off the highway, into farm lots, snow or sand, or any other position from which the Vehicle must be extricated.
(g) All damages resulting from loading the Vehicle beyond the manufacturers recommended GVW or GCW shown on page 2
(h) All damages to property resulting from the operation of the Vehicle off a public road.
(i) Any citations, fines or penalties including forfeiture or seizure resulting from use of the Vehicle during the term of this contract

(13) To pay Lessor at 5501 Green Valley Drive, Minneapolis, Minnesota on demand.
(a) Mileage charges computed at the rate specified on page 2 hereof for the mileage covered by the Vehicle during the period of this rental contract.
(b) Service and time charges computed at the rate specified on page 2 hereof for the period of this rental contract.
(c) All costs, including reasonable attorney's fees, in connection with the collection of amounts payable by Customer to Lessor under the provisions of this agreement, through an attorney or collection agency whether collected by suit or otherwise

(14) That Lessor is not required to provide a replacement Vehicle when Vehicle is damaged in an accident.

(15) That any deposit given by Customer shall be applied to and guarantee the faithful performance of all the provisions of this agreement, and for all sums which now or hereafter may be due hereunder, and for all repairs necessary to said Vehicle If any action is brought to enforce any of the terms or conditions of this agreement, or to recover any sums due hereunder, Customer shall pay all attorney's fees, court costs, or other expenses.

(16) EXCEPT AS OTHERWISE EXPRESSLY PROVIDED BY THIS AGREEMENT, LESSOR MAKES NO EXPRESSED OR IMPLIED WARRANTIES AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE CONDITION OF THE VEHICLE AND EQUIPMENT, ITS MERCHANTABILITY, OR ITS FITNESS FOR ANY PARTICULAR PURPOSE.

(17) That the form of this agreement is intended for general use and in the event any of the terms and provisions hereof are in violation of or prohibited by law, such terms and provisions shall be of no force and effect to the extent of such violation or prohibition without invalidating any other terms and provisions of this agreement The rights and remedies herein conferred upon Lessor shall be cumulative and not alternative and shall be in addition to and not in substitution of or in derogation of other rights and remedies conferred by law

(18) VEHICLE AND/OR EQUIPMENT ARE RENTED HEREUNDER FOR USE SOLELY WITHIN THE UNITED STATES AND CANADA INSURANCE REFERRED TO IN THIS RENTAL AGREEMENT IS NOT VALID IN MEXICO.

(19) No right of Lessor under this Rental Agreement may be waived except in writing by an officer of Lessor.

... TAL SYSTEM, INC.
AL — (404) 622-1011
31
GEORGIA 30027

657

№ T195532 4

MILEAGE ... ODOMETER 130000 ... 2005 MAY 3 A.M. P.M.

TS 7302

VSN. LICENSE PLATE

40,000

AN 657

MILES OUT 133925

MILES 12

DAYS

WEEKS @ 250.00

USE PERMITTED IN STATES OF ...Ky NC SC Ala Va... N J Cal Ga Ohio...

MINIMUM RENTAL - ONE DAY

NAME Council Wholesale
201 South Central
Albany Georgia

NOTE PHYSICAL DAMAGE BY "H" - HOLE "S" - SCRATCH "D" - DENT

BODY DAMAGE CHECK SHEET

COLLISION DAMAGE WAIVER (C.D.W)

Customer to Provide Collision Insurance X

Customer To Provide Liability Insurance X

99) RENTAL CONDITIONS
A X DAILY RENTAL
B LEASE CUSTOMER-EXTRA UNIT
C LEASE CUSTOMER - SUB UNIT
REPLACES T

99) EQUIPMENT TYPE
A E-LINES — PANELS
B S/A STAKE
C S/A VAN
D S/A REEFER
E S/A TRACTOR
F S/A SLEEPER
G T/A TRACTOR

National Car
Rental System, Inc.
Truck Rental — 657
P. O. Box 35187
Minneapolis, MN 55435

№ T195532

PAGE 2

UNIT CONTROL

EXHIBIT "B"

CK RENTAL — (404) 622-1011
. BOX 331
ONLEY, GEORGIA 30027

NATIONAL CAR RENTAL

C-1909

Nº T195300 3

657 01

Commodity Hauled: Motor Oil 43,000

Destination City: Atlanta 657

COUNCIL WHOLESALE
201 SOUTH CENTRAL
ALBANY GEORGIA

MINIMUM RENTAL - ONE DAY

(41) NAME COUNCIL WHOLESALE
(42) 201 SOUTH CENTRAL
(43) ALBANY, GA
(44) CITY (45) STATE (46) ZIP

NOTE PHYSICAL DAMAGE BY "H" - HOLE "S" - SCRATCH "D" - DENT

BODY DAMAGE CHECK SHEET

OK OK OK OK OK

CUSTOMER IS RESPONSIBLE FOR CONDITION OF UNIT — EXCEPTIONS LISTED ABOVE

CERTIFIES THAT I HAVE READ, UNDERSTOOD AND AGREE TO THE TERMS AND CONDITIONS
PAGE ONE OF THIS AGREEMENT AND ON THIS PAGE AND ACCEPT VEHICLE IN THE CONDITION
INDICATED ABOVE:

DRIVERS LICENSE NO. C-333174 STATE GA EXPIRATION DATE 1-19-76
PRESENT ADDRESS 722 TIFF AVE CITY ALBANY
ZIP PHONE NO. 436-7791 CREDIT APPROVED BY
GEORGIA

COMMENTS:

RENTAL CONDITIONS

National Car
Rental System, Inc.
Truck Rental — 657

1257 Henrico
Conley, Ga.

Nº T195300 3

This Rental Agreement No. Must Appear
On All Payments And Correspondence.

FORM 7000 (REV. 8/72)

PLEASE DETACH AND RETURN THIS STUB WITH YOUR PAYMENT ORIGINAL INVOICE

EXHIBIT "C"