## 47707. KYTLE v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY.

ARGUED JANUARY 2, 1973—DECIDED JANUARY 19, 1973— REHEARING DENIED FEBRUARY 6, 1973—

*Robert E. Andrews,* for appellant.

*Robinson, Buice, Harben & Strickland, B. Carl Buice, C. Frank Strickland,* for appellee.

DEEN, Judge. One of the definitive questions in the case involves a construction of the policy for the purpose of determining whether a structure not a part of the main dwelling is intended to be covered. On the face of the policy is stated:"Insurance is provided against only those perils and for only those coverages indicated below by a

premium charge." The following statement shows: "Amount $25,000. Premium at inception $358.58 fire and lightning inc. extended coverage." Directly below this under the heading "Amount Fire or Fire and Extended Coverage, or Other Peril" are listed five items totaling the $25,000 face coverage and with no indication that all are not equally covered. Items 1 and 5 appear as follows under the heading, "Description and location of property covered:

"1. $1,000 on a one story frame const. app. roof, owner occupied dwelling located 9 miles North East of Gainesville on Ga. No. 52, in Hall County, Georgia . . . . 5. $8,000 On Broiler House, masonry const. app. roof, located 350' South West of the main dwelling, as described in item No. 1."

We conclude that the stated premium does include fire, lightning and extended coverage (which latter includes windstorm, weight of ice, snow or sleet and collapse of building(s) or any part thereof) and that therefore the face of the policy is apparently intended to grant fire and extended coverage protection as to each of the five items listed immediately following, there being nothing in the main policy to indicate a different intent. There is additionally a separate endorsement page attached relating to extended coverage which lists the perils insured against and so denominated (including fire and lightning) and which states: "All provisions of this form and of the policy to which it is attached shall apply separately to each item covered, except as otherwise specifically provided." The broiler house being obviously one of the items listed would without question be a building as described on the face of the policy, except that the insurer contends the extended coverage is limited to the dwelling house itself by the language at the top of the attached endorsement which reads as follows: "Farm Dwelling Building(s) and Contents—Broad Form. Applicable only to Owner Occupied Farm Dwellings.

Section 1. Insurance attaches only to those items described on the first page of this policy for which an amount is shown in the space provided therefor and for not exceeding said amount."

Under these circumstances does "owner occupied farm dwelling" mean that the farm must contain a dwelling in which the owner lives, or does it mean that only the dwelling house in which the owner lives is covered? If the latter, what is the meaning of the statement that insurance attaches to the items on the first page for which an amount is shown? Of the total $25,000 amount of the five items on the first page, $22,000 applies to three broiler houses and only $1,000 to the dwelling house. By subsequent endorsement the dwelling house coverage was raised from $1,000 to $4,000 at an additional premium of $37.20, which suggests that of the original premium cost of $358.58 only about $12.50 applied to the dwelling house in the first instance. Remembering that the face of the policy states that extended coverage is included in the indicated premium charge, and also an indication in Section VI of the endorsement headed "Dwelling Coverage" indicating that it does refer to outbuildings equally with the dwelling house; ("When the insurance under this policy covers a dwelling or outbuilding(s). . . ") we are persuaded that at the very least a jury question is presented as to the intention of the parties (or the intention of one of the parties known to the other) to include extended coverage as to all of the listed items as to which a value amount was shown on the face of the policy. "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy." Code Ann. § 56-2419. "The rules governing the construction and interpretation of contracts generally are applicable to a policy or contract of insurance. The words employed in a

contract of insurance are to be taken and understood in their plain, ordinary, usual, and popular sense, rather than according to the meaning given them by lexicographers or persons skilled in the niceties of language. Also, it is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer. The policies are prepared by the company by experts and legal advisers acting in the interest of the company, and the insured has no voice in the selection and arrangement of the words employed." *Atlas Assurance Co. v. Lies,* 70 Ga. App. 162, 164 (27 SE2d 791), and cit. Where the face of the policy states, as to listed and valued items, that extended coverage is included in the premium charge, in the face of a definite and unambiguous exclusion, it is not for the court to decide that this is not in fact true as to 96% of the listed property valuation. That the meaning of "dwelling" in an insurance policy may, where ambiguous, be left to the triors of fact, see *Tudor v. American Emp. Ins. Co.,* 121 Ga. App. 240 (2) (173 SE2d 403).

■ The motion for judgment notwithstanding the mistrial was granted primarily on the theory that there was insufficient evidence offered by the plaintiff to support his contention that the building had collapsed as a result of windstorm. Evidence on this question included testimony of the plaintiff's next door neighbor that at the time of the occurrence it was storming with heavy, gusty winds, which blew over his barn and one of his chicken houses and that shortly after this he heard Kytle's broiler house blow over. Other neighbors testified that there was a windstorm at that time and that it blew limbs off trees and blew some trees down. Another witness in the immediate area testified that the wind was hard and that it blew down some buildings near him and some on his place. Another witness who examined the broiler house after the storm found it off its foundation and lying flat

with the large posts in the center which were mounted on blocks also lying flat, and that if the wind was of such velocity to blow them off the blocks, the building would collapse. Where "windstorm" is not defined in the policy, it generally means a wind of sufficient violence to be capable of damaging the insured property, either by its own action or by projecting another object against it. *General Insurance Co. v. Davis,* 115 Ga. App. 804, 809 (156 SE2d 112). There was ample evidence to show the existence of a windstorm at the time the broiler house was demolished, and to present a jury question as to the cause of its collapse.

The court erred in granting the motion for judgment notwithstanding the mistrial.

*Judgment reversed. Bell, C. J., and Quillian, J., concur.*