**In the Matter of MR. MACHINERY, INC., Debtor.**

**W. Wheeler BRYAN, Trustee in Bankruptcy of Mr. Machinery, Inc., Plaintiff,**

**v.**

**COMMERCIAL UNION INSURANCE COMPANY, Defendant.**

**Bankruptcy No. 80–04530A.**

**Adv. No. 81–0211A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

April 26, 1983.

C. David Butler, Hurt, Richardson, Gardner, Todd & Cadenhead, Atlanta, Ga., for plaintiff.

Sam F. Lowe, Jr., Lowe, Barham & Lowe, Atlanta, Ga., for defendant.

## MEMORANDUM OF OPINION

A.D. KAHN, Bankruptcy Judge.

A trial was held in the instant adversary action on January 10 and 11, 1983. The Complaint was brought by the trustee to recover on an insurance policy for the loss

of a piece of machinery, a coal auger. The parties have consented to this Court entering a final judgment and have agreed that no evidence would be submitted to any other court should the matter be appealed. The parties have also stipulated that the amount of loss and damage to the coal auger is $105,000.00. After hearing the testimony, reviewing the documentary evidence, and considering the trial briefs of counsel, the Court makes the following findings of fact and conclusions of law.

The debtor, Mr. Machinery, Inc., was in the business of buying and selling heavy equipment. In the course of this business, Marks, President of Mr. Machinery, located a coal auger for a customer, Century Coal Enterprises, a limited partnership. Marks arranged to purchase the coal auger from its owner, E & I Dredging, Inc. The purchase was financed by Leasing Service Corp. The transaction, dated December 5, 1977, was structured as a purchase of the coal auger by Mr. Machinery, followed by a lease between Mr. Machinery, Inc., as lessor, and Century Coal Enterprises, as lessee. The lease agreement was then assigned to Leasing Service Corp. The assignment of the lease provided that Mr. Machinery would be secondarily liable on the lease.[1]

During the time in question, the coal auger was located near Louisa, Kentucky on Century Coal's mining site. By July 1978, Century Coal was in default on its obligation under the lease. Service Leasing Corp. notified Century Coal that, because of the default, the debt was being accelerated. On September 27, 1978, the debt had not been paid and Service Leasing Corp. demanded that Mr. Machinery repurchase the lease. In late August or early September 1978, Service Leasing Corp. directed Marks to repossess the coal auger. It should be noted that the moving of an auger requires heavy equipment and a number of trucks. At that time; Marks sent in an independent trucking company to attempt to remove it from the mining site. The VanDykes, part-

ners of Century Coal, were still on the premises and refused to allow the trucking company to take the property.

Thereafter, in October, Marks learned that the VanDykes had abandoned the mine site, and he sent his own trucks into the area to pick up the equipment. By then, however, the weather was becoming bad in the Kentucky mountains, and Marks was not able to remove the auger from the mining site. He did, however, have the coal auger pulled to a flat piece of ground where he could get in to disassemble it.

At trial, there was some dispute as to whether Marks had subsequently gone to the mining site. Marks testified in Court that he had gone to the mining site to check on the coal auger. Commercial Union offered, for impeachment purposes, Marks' deposition in which he never mentioned this trip. Counsel for Mr. Machinery objected to the admission into evidence of the deposition in its entirety. The Court reserved its ruling on the admission of the deposition, but now holds that the entire deposition is admitted. In the deposition Marks testified as follows:

Q. I think from your previous testimony you recall one specific incident when you personally flew back over when snow was there—

(Marks) A. Right. We landed—the snow had melted down on the top a little bit. We landed there and looked over everything.

Deposition of Marks at 25.

After hearing Marks testify in Court and in light of the above statement, the Court finds that Marks did go to the mining site to check on the coal auger. He also had his helicopter "fly over it a lot to, you know, check on it." Transcript at 50. VanDyke was not on the premises of the mining site after the first attempt by the independent truck company to remove the auger, and at no time did VanDyke or anyone else at-

---

1. The lease assignment states, in part, that Mr. Machinery "warrants the payment when due of each sum payable thereunder and the payment on demand of the entire unpaid balance, in the event of nonpayment by the Lessee of any payment at its due date or of any other default by the Lessee without first requiring Assignee to proceed against said Lessee."

tempt to prevent Mr. Machinery from moving it.

On October 4, 1978, Marks signed a note with Leasing Service Corp. under which he was to be permitted to sell the auger to cover his obligations on recourse to Leasing Service Corp. Marks did advertise the auger for sale in equipment publications, but no sale resulted.

Century Coal had maintained a policy of insurance upon the auger which was terminated on August 18, 1978 for nonpayment. Mr. Machinery obtained its insurance from Commercial Union Insurance Co. through an independent agent, Byrd. Byrd was fully aware of the nature and practice of Mr. Machinery's business, and he had informed Commercial Union of the type of business Mr. Machinery conducted.[2] On March 30, 1977, Commercial Union had issued a special multi-peril policy to Mr. Machinery. Mr. Machinery was required to submit monthly reports listing the value and location of its equipment. The coal auger was listed in these monthly reports from October 1978 through March 1979. Premiums were paid during the relevant period, and there is no question that the policy was in force at the time of the loss.

Sometime during the winter of 1978–79, the coal auger was damaged when unknown persons pushed the auger over the mountainside. Upon discovery of the damage in February or March 1979, a proof of loss was timely submitted by Mr. Machinery. Commercial Union refused to pay for the loss on the ground the coal auger was not covered under the insurance policy.

The issues presented in this case are: a) whether Mr. Machinery had an insurable interest in the coal auger at the time it was damaged, and, if so, b) whether that interest was insured under the policy. These issues are to be decided according to the substantive laws of Georgia, the place where the insurance policy was delivered. See *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598 (5th Cir.1981); *Iowa State Travelers Mut. Ass'n v. Cadwell*, 113 Ga.App. 128, 147 S.E.2d 461 (1966).

### a) Insurable Interest

■ The Court finds that Mr. Machinery, Inc., did have an insurable interest in the coal auger. O.C.G.A. § 33–24–4 defines "insurable interest" to mean "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." Defendant maintains that Mr. Machinery did not own the auger at the time of the loss, and therefore, did not have any insurable interest in it. Defendant places great emphasis on the fact that Mr. Machinery did not have title to the auger. Based on the definition of "insurable interest" above, it is clear that title or ownership is not determinative. "The test of insurable interest in property is whether the insured has such a right, title, or interest therein, or relation thereto, that he will be benefited by its preservation and continued existence, or suffer a direct pecuniary loss from its destruction or injury by the peril insured against." *American Reliable Insurance Co. v. Woodward*, 143 Ga.App. 652, 653, 239 S.E.2d 543 (1977).

Moreover, at trial, Hunt, Commercial Union's regional marine supervisor, testified that, in the monthly reports submitted by the insured, it was not necessary to know who owned the equipment "since we're covering property owned by the insured or for which the insured is responsible." Transcript at 149.

**2.** A letter dated October 25, 1977 from Byrd to Hunt, Regional Marine Supervisor of Commercial Union gave the following description of Mr. Machinery's business:

Your file should indicate, or at least I believe we have discussed, the insured operates more as a finder/broker than the conventional equipment dealer that sells from his inventory at a specific location. In other words he flies around to check equipment he has located through trade bulletins, finds a buyer, and makes the deal. Since there is no title law involved, he concludes the transaction without ever having ownership of the equipment except during the process of completing the bills of sale. Plaintiff's Exhibit 19.

A case on point is *Mathis v. Rock Springs Wholesale Co.,* 157 Ga.App. 726, 278 S.E.2d 484 (1981). In *Mathis,* Francis Mathis had sold real property to Cordell and Hicks in exchange for a security note. She transferred the note to the Bank of LaFayette with full recourse against her. After the transfer, the property was destroyed by fire. The Georgia Court of Appeals found that she had an insurable interest in the property even though she had transferred the property and the note. The fact that she was secondarily liable on the note gave her an insurable interest. In the case at bar, it is clear that Mr. Machinery was secondarily liable on the lease for the auger, even though it had been assigned to Leasing Services Corp. This was sufficient to create an insurable interest in the auger.

### b) Insured Under Policy

■ Two provisions of the policy contained in the "Equipment Dealers Form" endorsement are critical to the case at bar. First, under "Property Covered" the endorsement states:

Personal property consisting principally of mobile agricultural and construction equipment such as binders, reapers, harvesters, plows, harrows and tedders, and bulldozers, road scrapers, tractors, pneumatic tools, and compressors, including accessories therefor, attached or otherwise, the property of the Insured and the property of others in the custody or control of the Insured, for sale, display, demonstration, storage, service, repairs or for the purpose of performing work thereon.

Commercial Union argues that a coal auger is not among the types of equipment listed under "Property Covered." It is clear by the use of the word 'principally' that it was not intended that the list of equipment be exhaustive. The coal auger was included in the monthly reports from October 1978 through March which Commercial Union required that Mr. Machinery submit. Commercial Union accepted premiums for the policy, and, at all times relevant to the case, the premiums were paid. Furthermore, it is a cardinal rule of insurance law that a policy be construed liberally in favor of the insured and strictly as against the insurer. *Kytle v. Ga. Farm Bureau Mut. Ins. Co.,* 128 Ga.App. 109, 112, 195 S.E.2d 787 (1973); *Atlas Assurance Co. v. Lies,* 70 Ga.App. 162, 164, 27 S.E.2d 791 (1943). Therefore, the Court finds that the coal auger was among the types of equipment covered by the policy in question.

Next, Commercial Union argues that the coal auger was not "property of the Insured" nor "property of others in the custody or control of the Insured." The Court finds that Mr. Machinery did have custody and control over the auger under the circumstances. Mr. Machinery had gone to the mining site and moved the auger to flat ground. They had begun to disassemble it. Weather conditions in the Kentucky mountains made it physically impossible to remove it from the site. Marks had personally visited the site, and Mr. Machinery's helicopter flew over the site. Marks was also attempting to sell the auger. He had placed ads in equipment publications. Therefore, the Court concludes that the auger was included in "property covered."

The second provision in the endorsement which Commercial Union maintains excludes the coal auger is contained under the hearing "Property Excluded." That provision states:

This policy does not cover:

(b) Property sold by or under encumbrance to the Insured or property leased or rented by the Insured to others after it leaves the custody of the Insured or an employee of the Insured

Commercial Union argues that Mr. Machinery had sold the coal auger to Century Coal and that it had left Mr. Machinery's custody within the meaning of the provision above. As the Court has stated above, Mr. Machinery had exercised sufficient control under the circumstances to regain custody of the coal auger. Therefore, the Court finds that the coal auger was not excluded from coverage of this policy and that the trustee may recover the stipulated amount for the damage done to the auger.

In addition to the stipulated amount of damage to the coal auger, the trustee is seeking to recover pre-judgment interest on that amount. While Georgia law allows a court to award pre-judgment interest if, in the court's discretion, the particular facts warrant such an award, this Court in the instant case declines to do so. *See Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.,* 655 F.2d 598 (5th Cir.1981).

An appropriate Judgment will be entered contemporaneously herewith.